HENDERSON WILCOX and RAY TRUESDELL, Respondents, v. LAWRENCE COONS and OTIS TEMPLE, Appellants, No. 41082—220 S. W. (2d) 15.

Court en Banc, May 9, 1949.

*Charles M. Miller* for appellants.

54

*C. M. Hulen* for respondents.

**ELLISON, J.**—This suit involves the title to 220 acres of farm land in Randolph County worth more than $7,500. Appellate jurisdiction therefore is in this court for two reasons: Art. V, Sec. 3, Const. Mo. 1945. On change of venue the cause was tried to a jury in Audrain County, and was heard on a fourth amended petition in two counts: the first being an action to determine title; and the second, in ejectment.

The plaintiffs-respondents and the defendant-appellant Otis Temple, both claim title to the land, the former under a deed duly acknowledged on its face, and the latter under subsequent wills, all executed by the same former owner. The defendant Coons was Temple's tenant on the farm. There was no direct proof of the delivery of the deed to the respondents. They rely on the statutory presumption of delivery raised by Sec. 3435.[1] The trial court mandatorily instructed the jury to find for the respondents on both counts of the petition, except as to the damages for appellants' detention of the land.

The appellants' assignments are that the trial court erred: (1) in thus mandatorily instructing for respondents [which is the main point in the case] and should have directed a verdict for appellants; (2) in admitting the testimony of the scrivener of the deed, who was a lawyer, on the theory that the communications between him and the grantor were privileged and inadmissible under Sec. 1895; (3) in admitting the deed in evidence because the undisputed proof showed it was executed almost nine years before the grantor's death; (4) in admitting testimony as to the grantor's physical condition when he made the subsequent wills; (5) in excluding appellants' offer of an insurance policy covering buildings on the farm, which the grantor had taken out subsequent to the execution of the deed, on the theory that it tended to show the grantor claimed to own the land despite the prior deed.

The common source of title was Robert C. Collins, a bachelor 81 years old when he died in Randolph County on January 10, 1947. Almost exactly nine years before his death he executed the challenged warranty deed on January 11, 1938, conveying the farm to respondents, Wilcox and Truesdell, who were strangers in blood. The expressed consideration therein was "One Dollar and other valuable considerations." The scrivener, Mr. Emil F. Gutekunst, a lawyer in Randolph County, testified Collins came to his office (alone, ap-

---

[1] All references to our statutes are to R. S. 1939, Mo. R. S. A., unless otherwise noted.

parently) ██ and asked him to prepare the deed. He said Collins "told me what he wanted, which I did. That's about all. ₐHe knew what he wanted when he came in the office." After the deed was written Collins signed and acknowledged it before the scrivener, and the latter added his certificate of acknowledgment and seal, as a Notary Public, with the date of expiration of his commission, which was after the date of the acknowledgment. He then delivered the instrument to Collins, who paid for the service and left taking it with him. On cross-examination the scrivener was asked· "in drawing that deed you acted as his attorney," and he answered, "Presume that's ⌐⌐rrect."

Th ⌐₋ ₑ ıs no direct evidence showing what Collins did with the deed, or ꞁether he ever delivered it to the respondents named therein as ⸢ ₋ntees. They did not testify or attempt to do so. Whether this was ⸢ecause they considered themselves incompetent as witnesses unₒ ∶ the dead man's statute, Sec. 1887, the record does not discloꞩ The only evidence on that point is the testimony of the recorder of ₒ ₋eds, the records of his office, and the indorsements on the deed itse⸢ ∶. From these it appeared that the deed was filed for record on ⸢pril 16, 1947, at 8:02 A. M., which was 3 months, 6 days after thꞌ grantor's death and 9 years, 3 months, 5 days after its execution. Th ∶ records did not show who presented the deed for filing. The reᵥorder retained possession of it for one year under Sec. 13178, beₐuse it had been signed and acknowledged more than a year befo.eꞌit was presented for record.ₐ The only other evidence presented bᴵ respondents consisted of certain "admissions against interest" made by the appellant Coons in his deposition taken by respondents. These were admitted against Coons only, and were to the effect that he knew the grantor Collins during his lifetime; and that he had leased parts of the farm in dispute from his co-appellant, Temple, as executor of Collins' estate, under a written lease dated February 5, 1947 [which was nearly a month after Collins' death] ; and that as such tenant he had produced a crop of corn that year on about 80 acres of the land. This was followed by the testimony of two witnesses as to the rental value of the farm, as bearing on the damage for its retention. This was all of the evidence for respondents.

The evidence for appellants must be sketched as briefly as possible. Two wills executed by the grantor Collins were introduced in evidence: one dated October 6, 1944 and probated January 11, 1947 [the day after Collins' death] ; and the other dated February 10, 1945, and probated May 2, 1947. Both were identically the same, except as to date and subscribing witnesses. In each the first clause directed the payment of the testator's "just debts and funeral expenses and expenses of my last illness," out of his personal estate, if possible. The second clause devised his whole residuary estate, real, personal and mixed, to his nephew, the appellant Otis Temple,

absolutely. The third clause appointed Temple as his executor without bond, and further authorized him to sell all of the estate property, whether real, personal or mixed. The probate inventory filed showed the only real estate owned by the testator at the time of his death was the 220 acre farm in suit; and there was also a fire claim against the Wabash Railroad for $250 damages to that land, originating in 1943, some five years after the date of the disputed deed.

The scrivener of the two wills, W. B. Stone, a lawyer at Moberly, testified he wrote the first one in accordance with the directions of Collins and kept a copy. The appellant Temple accompanied Collins to Stone's office on that occasion, which fact was corroborated by Temple. Later the testator came to his office again, saying he thought he had lost the first will; the scrivener told him he had kept a copy of it; and at the testator's direction he wrote the second will like the first. This second will was left in Mr. Stone's custody, and at the request of some one he produced it in the probate court.

Another lawyer, Mr. Sterrett of Slater in Saline County where appellant Temple lived, testified that Temple was sick at home when Collins died and that he (Sterrett) after being called by Temple, went to Moberly in Randolph County and made the arrangements for Collins' funeral. While there he filed Collins' first will, of October 6, 1944, in the Probate Court. This will had been in appellant Temple's safety deposit box in a bank at Slater and Sterrett had taken it from Slater to Moberly with him. On examination of Collins' personal effect in Collins' home a copy of that same will was found. Thereafter Sterrett learned of the second will of February 10, 1945, from Mr. Stone's secretary and that also was probated on May 2, 1947.

There was also testimony for appellant Temple from several witnesses, including himself and wife, that Collins had visited them frequently, and had declared he intended to "will Otis (Temple) everything he had;" or that he was "taking care of the farm *for*" Temple; or that he was "going to leave him the farm." Appellant Temple also testified Collins had told him on October 4 or 6, 1944, the latter being the date of the first will, that "I am giving you the farm," and that "I am giving Mr. Wilcox (one of the respondents) $500," and two other persons $500 each, but that he also said: "I may not have $500 at my death;" and "I want you to have the farm and all the personal property."

Another witness, an old acquaintance named Christian, testified that in 1943 or 1944 Collins told him "he had *willed* (the farm) to Wilcox and Truesdell," and that while he was off in Colorado with Wilcox, he told them to turn some cattle on the farm, and "when he got back home he ordered the cattle out. He said they had the grass down to the roots—and never offered to pay a dime for it, and he changed the deed—the will. He never did say anything about a deed—a will."

58

·It seems to be conceded that Collins, the grantor in the deed, lived on the farm continuously from the time of the execution of the deed in 1938 to his death, and that he paid the taxes on the land for all of those eight years except 1943, for which no tax receipt was found. A fire insurance policy covering the buildings on the farm, issued in Collins' name in 1943 and still in effect when he died, was offered in evidence. It provided that if he did not have *title* the insurance would be void. The court permitted the appellants to prove Collins thus carried insurance on the farm, but refused to admit in evidence the title requirement recited in the policy.

■ We take up first appellants' second assignment, that the trial court erred in admitting the testimony of attorney and scrivener Gutekunst, because Sec. 1895 made him incompetent to testify concerning any confidential communications between him and his client, the grantor Collins, without the consent of the latter, which consent was not obtainable, the grantor being dead. Furthermore, Sec. 3438 provides: "If the party contesting the proof of any such instrument shall make it appear that such proof was taken upon the oath of an incompetent witness, (Gutekunst?) neither such instrument nor the record thereof shall be received in evidence until established by other competent proof."

. In our opinion this assignment is not well founded. While Mr. Gutekunst was a lawyer, he was employed in the capacity of a scrivener to write the deed. In that situation Sec. 1895, supra, does not apply. It is not shown or contended that any legal advice or service was sought by Collins other than that required for the drafting of the instrument. Witness Gutekunst's testimony concerned only his instructions from the grantor, the subscription of the deed by the grantor, and the taking and certification of his acknowledgment by the witness as a Notary Public. He was not an attorney in the instant case, but even if he had been, Rule 4.19 of our present Code of Ethics, formerly Rule 33.19, would not have prevented him from testifying to the "attestation" (acknowledgment) of the deed. Burgdorf v. Keeven, 351 Mo. 1003, 1010(3), 174 SW. (2d )816, 819(4). On the general · question see the authorities cited below.[2]

■ [19] Further, even if Gutekunst was acting as a lawyer when he drew the deed and took the acknowledgment thereof, he was representing Collins the grantor therein. Collins died before the trial, and the incompetency of privileged communications between Gutekunst and him could be waived by his representatives. But who were his

[2]58 Am. Jur., pp. 268-9, §§ 480, 481; 70 C. J., pp. 408-9, § 550; 141 A. L. R., p. 554, footnote 3; Ann. Cas., 1913 A, p. 14; Mason v. Mason (Mo. Div. 1) 231 SW. 971, 973-4 (5); State ex rel. C., R. I. & P. Rd. Co. v. Wood, 316 Mo. 1032, 1040 (8), 292 SW. 1033, 1036 (11); Bussen v. Del Commune (Mo. App.) 199 SW. (2d) 13, 20. (10); State v. Hammett (Mo. App.) 203 SW. (2d) 115, 125 (19).

representatives? The suit was between the respondents as grantees in *his* deed [and not as mere strangers or creditors] and the appellant Temple as devisee in his will and appellant Coons as Temple's tenant. In other words, both sides were claiming under Collins, but respectively through competing instruments emanating from him. In analogous circumstances it was held in Thompson v. Ish, 99 Mo. 160, 174-7 (7), 12 SW. 510, 513 (4), 17 A. S. R. 552, a will contest, that *either* the contesting heirs of a testatrix *or* the proponent devisees in her will would be *her representatives,* and could waive privileged communications between her and her physician; that it would be unjust to hold the privilege belonged to one set of such claimants and not the other; and that the rule was the same as in privileged communications between attorney and client. We think that rule is applicable here, as the Thompson case has been consistently followed since.[3]

And beyond all that, the case was not wholly dependent on the testimony of witness Gutekunst. Sec.'s 3408, 3413, 3414, 3416 and 13361, considered together, provide acknowledgments of written conveyances of real estate may be taken and certified by a notary public under his hand and official seal. And Sec. 13363 provides that the record and copies of such instruments so authenticated, when certified by the proper custodian thereof, "shall be received in evidence." Hence, even if Mr. Gutekunst had not testified, the testimony of the recorder of deeds and the original deed and acknowledgment produced by him as custodian would have made a prima facie case for respondents.

Returning to appellants' first and principal assignment, that the trial court erred in *directing* the jury to return a verdict for respondents on the issues of title and right to possession, and leaving to the jury only the issue on the amount of damages for wrongful detention of the land. Obviously this ruling was and must have been based on the statute, Sec. 3435, for there was no direct evidence whatever of the delivery of Collins' deed to respondents before his death. This statute and the others mentioned in this connection had been in force for years, and long prior to the events here involved. Respondents' brief solely relies on it. It provides: "Sec. 3435. Every instrument in writing, conveying or affecting real estate, which shall be acknowledged or proved, and certified as hereinbefore prescribed, may, together with the certificates of acknowledgment or proof, and relinquishment, be read in evidence, without further proof."

But that statute must be read in connection with another almost immediately following, which provides: "Sec. 3437. Neither the cer-

[3]Ex parte Gfeller, 178 Mo. 248, 267-8(5), 77 SW. 552, 557-8(5); Spurr v. Spurr, 285 Mo. 163, 180(4), 226 SW. 35, 40(6); Canty v. Halpin, 294 Mo. 96, 105(5), 242 SW. 94, 96(8); Johnson v. Antry (Mo. Div. 2) 5 SW. 405, 408(5); Clark v. Skinner, 334 Mo. 1190, 1199(6), 70 SW. (2d) 1094, 1099(8); Runnels v. Allen's Adm'r (Mo. App.) 169 SW. (2d) 73, 76(1).

tificate of the acknowledgment nor the proof of any such instrument nor the record nor the transcript of the record of such instrument, shall be conclusive, but the same may be rebutted.''

Respondents' brief cites several decisions of this court[4] [which we shall refer to frequently hereafter] holding that proof of the foregoing nature constitutes *prima facie* evidence that a deed of land was duly ▮ delivered. Appellants' brief concedes that, but argues it is only a procedural presumption which disappears on the adduction of controverting evidence, citing Kellogg v. Murphy, 349 Mo. 1165, 1180(7), 167 S. W. (2d) 285, 293(8). The Akins, Spicer, Barbee and Burk cases, supra,[4] cited by respondents do say such evidence makes a prima facie case for the grantee and dispenses with further initial proof of the due execution and delivery of the deed. But the Spicer case further says if no controverting evidence is introduced by the opposing party, the grantees' case stands proven and is not an issue for the jury. The presumption therefore cannot be purely procedural. It is really a statutory inference.

▮ Since the ''presumption'', even when controverted by opposing evidence, is treated as having inherent probative value before the jury, the next question is, how much *weight* does it have? This is a question of case law, and we must go into it at some length. On that point the cited Koewing case says no more than that the acknowledgment of a deed is prima facie evidence of its delivery. The Spicer case holds, ''the jury are bound to consider it.'' The Akins case says it ''relieves parties from common law burdens of proof of execution.'' The Burk case says: ''Our statute does not relieve the defendant (respondents here) of the burden of proving the execution of the deed, but it does make a certain fact prima facie evidence of the due execution of the deed, and *to that extent* lightens in the first instance his burden.'' Continuing, the decision says the presumption is not conclusive.

The Barbee case held the ''inference'' (not presumption) of the due delivery of the deed there involved, arising from Sec. 3435, supra, *along with other* supporting evidence in the case, such as that the grantee had been in possession of the land for some years both before and after the execution of the deed, and had made substantial permanent improvements and paid the taxes thereon—the case held, we say, that *all* this evidence *together* made a case for the grantee so strong that evidence to rebut it should be ''clear and decisive.''

[4]Koewing v. Green Co. B. & A. Ass'n, 327 Mo. 680, 686(2), 38 SW. (2d) 40, 42(3); Keener v. Williams, 307 Mo. 682, 701(1), 271 SW. 489, 494(12); Akins v. Adams, 256 Mo. 2, 8, 164 SW. 603, 604(1); Spicer v. Spicer, 249 Mo. 582, 597(6), 155 SW. 832, 836(6); Barbee v. Farmers Bank of Polo, 240 Mo. 297, 305-6, 144 SW. 839, 841(1); Burk v. Pence, 206 Mo. 315, 339(1), 104 SW. 23, 30; Elliott v. Sheppard, 179 Mo. 382, 391-2(2), 78 SW. 627, 629-30; Barrett v. Davis, 104 Mo. 549, 555(1), 16 SW. 377, 378(1).

But to the contrary the Keener and Elliott cases ruled the statutory "presumption" arising under Sec. 3435 from the recited due acknowledgment of a deed, *alone* is so strong that the evidence to overcome it must be "clear and satisfactory." The issue in the Keener case was on delivery of a deed. In the Elliott case it was forgery. The latter decision is founded on the Barrett case, where the issues were on forgery and false acknowledgment of a married woman's conveyance violating Sec. 681, R. S. 1879. It held there should be a "clear and decided preponderance" of controverting evidence to rebut the recitals in the certificate of acknowledgment, and based that doctrine on the presumption of regularity attending the acts of public officials. However, it should be noted that this Barrett decision ruled the presumption had been overcome by the evidence and reversed the cause.

The Barrett decision was reviewed in Albright v. Stevenson, 227 Mo. 333, 341, 126 SW. 1027, 1028, which says the doctrine there laid down is stated "as strongly as it should be stated in view of the peculiar language of our statute." And there too the deed was held invalid on the ground of forgery, against the presumption arising from the notary's acknowledgment. Again, in Harvey v. Long, 260 Mo. 374, 390-1(2), 168 SW. 708, 712, the Elliott case, supra, was invoked and its formula adopted—that evidence to overcome the statutory presumption of delivery of a deed arising out of its acknowledgment must be "clear and satisfactory." But only two judges concurred, two agreed in the result, and three dissented. So it is authority solely as to result.

The textual works, with one exception, state the rule even less strongly than most of our decisions.[5] The exception is 26 C. J. S., p. 634, §204, which does say: "Clear and convincing evidence is, however, required to overcome a presumption [21] arising from the execution, acknowledgment, or recording of a deed, although nondelivery need not be established with certainty." The Missouri cases cited are: Mason v. Mason (Mo. Div. 1) 231 SW. 971, 972 (2); Cloves v. Cloves (Mo., Div. 1) 239 S. W. 145, 147(2); Raney v. Home Ins. Co., 231 Mo. App. 1, 8 (5). Of these the Mason case declared the rule as stated, but only two of the four judges concurred and it is authority only for its result. The Cloves case merely ruled the presumption of delivery of a deed which "ordinarily arises" from its being recorded, along with other evidence, was not overcome by the controverting evidence. And in the Raney case the deed was made for a fraudulent purpose by the grantor and recorded by him, in consequence of which acceptance was presumed.

---

[5] 18 C. J., p. 410, §483, text to notes 21, 22, citing the Burk case, supra; 26 C. J. S., p. 592, §183, text to notes 43, 44, citing Harrison v. Edmonston (Mo., Div. 2) 248 SW. 586, 588(1); 1 C. J. S., p. 810, §26; 16 Am. Jur., p. 513, §134; 1 Am. Jur., p. 326, §26.

None of the authoritative decisions cited herein use the intensive expressions "clear and decisive", "clear and satisfactory" or "clear and decided preponderance", except the Keener, Elliott and Barrett cases; and also the Burk case, but there only as applied to *all* of the strong evidence adduced by the proponent of the deed involved. We are not required in this case to declare how strong the statutory inference or presumption is, any further than is necessary in determining whether the trial court erred in directing a verdict for the respondents, who were grantees in the challenged deed.

It is evident the two statutes, Sec's 3435 and 3437, were enacted for the repose of titles, and probably were intended to apply more strongly as the difficulty of ascertaining the facts increased through the dispersal or death of the parties and witnesses, and the lapse of time. The reason given in the Barrett case—presumption of right action by the officer taking the acknowledgment—is not a strong one, so far as concerns the *delivery* of the deed, for that, in many instances, would not occur in his presence, nor would he be charged with any *official* duty concerning it. The strongest reason, outside of public policy, is the fact that ordinarily people do not make and acknowledge deeds of their land unless they intend to convey it to the grantee. Yet we know there are uninformed persons who believe they can withhold delivery.

In this case the evidence for respondents is weak. The deed was made nine years before the death of the grantor, Collins, and was turned over to him at the time of its execution. It was not recorded until 3 months 6 days after his death, and the record does not show who presented it for record or where it was found. In the meantime he had executed two identical wills to his nephew, the appellant Otis Temple, in 1944 and 1947. The first of these was in Temple's bank box when he died. There is nothing to indicate Collins did not retain the deed in his own possession during those years except the fact that it was not found among his private papers after his death.

It seems probable that the respondent grantees could have ascertained who filed the deed for record 3 months after Collins' death, and 2 months 16 days before they brought this suit on July 2, 1947. The recorder of deeds testified his deputy handled the transaction, but she was not called as a witness by either side. If Collins delivered the deed to respondents of course they knew it. Or if he put it in escrow to be delivered at or before his death, it would seem that fact might have been proven by a third person. Assuming the respondents did not offer to testify because they believed they were disqualified under the dead man's statute, Sec. 1887, that did not prevent them from utilizing their knowledge and the results of their research, so far as it could be done without testifying themselves. This is not stated critically or with certainty as to the facts, but only as bearing on the issue whether appellants made a case for the jury.

The respondents answer that the facts they proved, aided by the statutory presumption raised by Sec. 3435, made a prima facie showing of delivery of the deed, and cast the burden on appellants to prove nondelivery, citing Zumwalt v. Forbis, 349 Mo. 752, 754 (1), 163 SW. (2d) 574, 575 (2). In other words, their theory is that they were not obliged to go further in adducing evidence. But respondents were plaintiffs, seeking to establish their title by proving delivery of the deed to them, among other things, it would seem the "burden of proof" on the whole case rested on them, while the "burden of evidence" was on the appellants to show nondelivery. Downs v. Horton, 287 Mo. 414, 431 (10), 230 SW. 103, 108 (2). Sec. 3437 expressly provides the presumption may be rebutted. But whether this be true or not, it is said in Burnside v. Doolittle, 324 Mo. 722, 730, 24 SW. (2d) 1011, 1016: "Where it is apparent that a party has the power to produce evidence of a more explicit, direct and satisfactory character than that which he does introduce and relies on, it may be presumed that if the more satisfactory evidence had been given it would have been detrimental to him . . . ."

We do not mean to say it was "apparent" that the respondents were withholding better evidence than they produced. But it appears probable that such evidence could have been obtained. This, in connection with the unexplained disappearance of the allegedly delivered warranty deed containing no reservations, made nine years before the grantor's death, conveying his home farm worth $8800 for a consideration of $1 and other valuable considerations, and the recording of the deed by an unknown person over three months after his death—all this does not raise a strong presumption of delivery of the deed to the grantees in his lifetime.

On the other hand the appellants' evidence was strong. After making the deed and taking it with him the grantor Collins retained record title and sole possession of the farm, lived thereon for the nine remaining years of his life, and kept it in repair. He paid the taxes thereon, which were assessed in his name, for all those years except one for which a receipt could not be found. He carried fire and windstorm insurance on the buildings and paid the premiums, the policy reciting the insurance would be void if he were not the owner. He filed a claim in 1943 against the Wabash Railroad Company for fire damages to the farm, as his, which was still pending at this death. The respondents were strangers in blood to him and apparently had slight contact with him the latter part of his life. He made two wills, one in 1944 and one in 1945, devising the farm to his nephew, the appellant Otis Temple. He told Temple and his wife that he was going to "will" or "leave" or "give" the farm to him (Temple). He made some of those statements in the presence of witness Crane. He told a witness, Christian, that he had "willed" the farm to respondents

once, but they had imposed on him and paid him nothing, and he had changed his "will."

The instant case is much weaker for the respondent grantees than was the somewhat similar case of Clark v. Skinner, 334 Mo. 1190, 70 SW. (2d) 1094, which was heard on the merits and the conveyance there involved upheld. The evidence here showing retention of possession and control of the land by the grantor is like that held in Coles v. Belford, 289 Mo. 97, 106-7, 232 SW. 728, 731, to indicate an intention on the part of the grantor to postpone the effective date of the deed there in controversy, and make it a testamentary disposition. We think this cause should have been submitted to the jury on the issues of title and right to possession, and that the trial court erred in refusing to do so.

■ We overrule appellants' third assignment contending it was error to admit in evidence the deed in controversy because it was too old, and was not recorded until after the grantor's death by some unknown person. Appellants' fourth assignment asserts it was error to admit testimony as to the grantor Collins' mental and physical condition when he made the two wills in 1944 and 1945. We do not agree. The evidence was not offered to invalidate the wills, but only as tending to show the wills did not impeach his prior deed made in 1938.

■ With reference to appellants' fifth assignment, that the trial court erred in refusing to permit appellants to prove to the jury that the fire and windstorm insurance policy which Collins carried on the land contained a recital that it would be void if he did not have title. We do not understand on what theory it was excluded, unless it be that it would be self-serving. In the Coles case, supra, 289 Mo. 1. c. 108, 232 SW. 1. c. 732 (3) this court overruled an objection to similar [23] evidence in the form of letters written by a grantor to her banker about taxes and repair on her land after she had executed the deed in controversy.

For the reasons stated, the judgment is reversed and the cause remanded. *Clark, Douglas, Hyde, JJ.,* and *Leedy, C.J.,* concur, *Tipton* and *Conkling, JJ.,* concur in result.