People of the State of Illinois, Plaintiff-Appellee, v. John A. Svizzero, Defendant-Appellant.

Gen. No. 50,707.

First District, Third Division.

June 8, 1967.

Victor F. Ciardelli and Gerald Petacque, of Chicago (James R. Thompson, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Patrick A. Tuite, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

A jury found the appellant, John Svizzero, guilty of burglary and he was sentenced to the penitentiary for a term of ten to twenty years.

Svizzero and four other men, who were indicted with him, were apprehended in a building located at 36 South Peoria Street, Chicago. The building was the headquarters for various unions and its custodian, John Waterford, resided with his wife on the fourth floor. Around 4 a. m. on October 17, 1963, the Waterfords heard noises in the building. Waterford investigated, then returned to his apartment and called the police. Policemen converged on the building and Waterford went down the fire escape to let them in.

While waiting to be admitted into the building, the policemen observed flashlights shining on the second floor. On that floor, in the office of the Roofers' Union, they found Svizzero and two other men, John Johnson and Bruno Dispenza. Another man, Ernest Pucillo, was discovered in the same office under a desk. The fifth man, Eugene Yocca, was hiding in a compartment under the roof.

The office of the Cement Masons' Union also had been broken into and it was for this burglary that the five men were indicted. Three safes in this office had been opened and $1,300 was missing. The $70 petty cash fund was gone.

The defendant contends that the trial court erred: (1) in refusing to allow him access to a pretrial statement of one of the State's witnesses, (2) in admitting into evidence the statement he made to the police and (3) in permitting the State to impeach a defense witness.

In oral argument before us the defendant waived his first contention. Although he maintained that the trial

court erred in ruling that the statement was not discoverable, he conceded that the error was harmless.

██ His second contention, based on the failure of the police to warn him of his right to remain silent and to inform him of his right to counsel, was neither waived nor argued. Although he conceded that the case law in Illinois is contrary to his contention, he preserved the point. This makes it necessary for us to pass upon it. The rules implementing the right to maintain silence under accusation and to the assistance of counsel announced in Miranda v. Arizona, 384 US 436 (1966), need not be applied to trials commencing before June 13, 1966, Johnson v. New Jersey, 384 US 719 (1966); and in Illinois it has been held that they will not be, People v. Williams, 36 Ill2d 194, 222 NE2d 321 (1966); People v. Kirk, 36 Ill2d 292, 222 NE2d 498 (1966). The defendant's trial took place in 1964. Since the record does not indicate that he requested counsel while detained in police headquarters and he does not contend that his statements were not voluntary, the admission of the statements in evidence was not error. People v. Latimer, 35 Ill2d 178, 220 NE2d 314 (1966).

Svizzero's third point pertains to the impeachment of Pucillo who pleaded guilty and testified for the defense. Svizzero, when questioned by the police, had said that the burglary was not his operation and that he needed money for a bondsman and for attorney fees. He did not testify, however, at the trial; his defense was included in that of his codefendants, Johnson and Yocca.

Johnson testified that he, Svizzero and Yocca were painting a house in Canton, Ohio, from October 14th through the 16th; that they arrived in Chicago early on the morning of the 17th; that on their way home he telephoned his wife who told him Pucillo, from whom he had borrowed the auto he was driving, wanted him to come to 36 South Peoria Street where Pucillo was gambling; that they went to that address and were met

by Pucillo who opened the door, told them to park the car and come upstairs; that when they reached the second floor Dispenza came running by yelling to Pucillo that the police were coming, and that shortly thereafter they were placed under arrest. He denied breaking into the building or knowing of the burglary prior to his arrest. Yocca testified similarly. Mrs. Johnson also corroborated her husband.

Pucillo, who had entered a plea of guilty just before the trial started, testified that he, Bruno Dispenza (who pled guilty three months before the trial) and two other men, whom the police did not capture, broke into the building and the Cement Masons' office. He said he had loaned his automobile to Johnson and that on the night of the burglary he told Johnson's wife that he needed his car badly and to tell her husband to bring it to him regardless of what time he came in. He said he had not discussed the burglary with Svizzero, Johnson or Yocca, that they were not present when he and his confederates entered the building, that he was acting as the lookout and he let them in.

Upon cross-examination the prosecutor attempted to impeach Pucillo on the basis that his testimony was inconsistent with what had taken place at the time he pleaded guilty. The record shows that before Pucillo's plea was accepted his attorney, the attorney for Svizzero and the prosecutors conferred with the trial judge in his chambers. Pucillo was brought in and the following took place:

The Court: ". . . Mr. State's Attorney, advise me of what the facts are in the case.

Assistant State's Attorney: ". . . [T]he defendant, while in the company of Bruno Dispenza, John Johnson, John Svizzero and Eugene Yocca, entered into the various union halls located at 36 South

255

Peoria . . . and that upon entering the premises they entered with intent to commit burglary therein, and took certain property, and were apprehended on the premises after entering these offices with the intent to commit theft.

. . . . . .

"And on the burglary case would you stipulate the facts in the case would sufficiently sustain the indictment on the burglary?

Pucillo's attorney: "So stipulated."

Over Svizzero's objections and motions for a mistrial the prosecutor was permitted to ask Pucillo whether he remembered the statements made in the judge's chambers. He replied that he recalled the prosecutor's speaking but did not remember what was said. The prosecutor then asked him these questions and received these answers:

"Q. . . . [T]hat was on the day this jury trial was to begin is that correct?
"A. Yes.
"Q. You knew on that date that these three defendants were going to trial, is that right?
"A. Yes.
"Q. At that time, or at any time, did you volunteer or tell the Judge these men had nothing to do with it?

. . . . . .

"Did you tell the Judge or tell me?
"A. No, I didn't."

It is the defendant's position that neither the stipulation nor Pucillo's conduct at the hearing afforded a ground for impeachment. The State responds that the impeachment was proper because Pucillo stipulated that

256

Svizzero was one of the burglars and that by not denying the assertion of Svizzero's participation he impliedly admitted it.

██ The purpose of the hearing was to allow Pucillo to change his plea to the indictment, and his attorney was authorized to acknowlege his participation in the crime. There is no basis for inferring that his attorney possessed authority to stipulate Pucillo's belief in the guilt of his codefendants and his attorney did not do so; he merely agreed that the facts asserted by the prosecutor would sustain the indictment against Pucillo, nothing more. Consequently, the stipulation cannot be given the expansive reading the State urges. Furthermore, it could not be maintained that either Pucillo or his attorney had the right to stipulate to Svizzero's guilt. Svizzero could not be bound by what either said outside of his presence.

██ Pucillo's failure to assert Svizzero's innocence was not a tacit admission that he believed him guilty. The theory of the tacit admission rule is that a person will naturally deny untrue assertions made in his presence and against his interests. IV Wigmore, Evidence, § 1071, p 70 (3rd ed 1940); cf. People v. Homer, 8 Ill 2d 268, 133 NE2d 284 (1956); People v. Smith, 25 Ill 2d 219, 184 NE2d 841 (1962), and People v. Marshall, 74 Ill App2d 472, 221 NE2d 128 (1966). Because Pucillo had determined to plead guilty, his own interests and rights were not affected by the prosecutor's charging Svizzero with complicity. Pucillo testified that he had been told by his attorney that all he had to do when he went into the judge's chambers was to plead guilty to the charge. There was nothing more for him to do. He answered "yes" to the questions the court addressed to him about whether he wanted to change his plea from not guilty to guilty, about knowing that he could have had a jury trial and whether he understood the consequences of his plea. He was not asked by court or counsel

■■■■■■■■■■■■■■■■■

about Svizzero's participation in the crime. He was under no obligation to interrupt the prosecutor, and had no motive personal to himself to contradict the charges being made against someone other than himself. His silence cannot be considered an implied assent. Therefore, the hearsay statements made in the judge's chambers, the recounting of what took place there and Pucillo's silence were inadmissible. Cf. People v. Bennett, 3 Ill2d 357, 121 NE2d 595 (1954) and People v. Pulaski, 15 Ill 2d 291, 155 NE2d 29 (1958).

■■■■■■ The prejudicial effect of the attempted impeachment is more readily understood when it is considered that even if Pucillo's silence were a tacit admission, the attempted impeachment was improper. An out-of-court accusation by a witness against a defendant is not admissible as proof of the truth of the accusation unless it was made in his presence, People v. Morgan, 28 Ill2d 55, 190 NE2d 755 (1963); the accusation may be used only to impugn the credibility of the witness by showing his inconsistency, People v. Moses, 11 Ill2d 84, 142 NE2d 1 (1957). When the jury is not instructed as to the limitations on the use of the accusatory statement, there is a great danger that it will consider the evidence for an improper purpose and accept it as substantive proof of the defendant's guilt. This is especially so when the witness was an alleged confederate of the defendant. This danger is lessened by instructions, and convictions have been reversed in cases where limiting instructions were not given. E. g., People v. Tate, 30 Ill2d 400, 197 NE2d 26 (1964); People v. Paradise, 30 Ill2d 381, 196 NE2d 689 (1964); People v. Tunstall, 17 Ill2d 160, 161 NE2d 300 (1959). In the case at bar the attempted impeachment created the serious danger that the jury would use as substantive evidence against Svizzero the testimony which was admitted only for the attempted impeachment of Pucillo. The danger was not

258

mitigated by a limiting instruction. The jury was not admonished at the time the evidence was admitted that it was being received only for impeachment and no written instruction was subsequently given cautioning the jury to restrict its consideration of the evidence to its proper purpose.

Svizzero's defense was bound up with that of his co-defendants Johnson and Yocca. Their explanation of how the three of them came to be at the union hall and what they did there was contradicted in several vital details by the State's witnesses and by the inferences that could be drawn from their being caught on the premises. The issue of credibility was thus the determinative factor in the jury's finding against Svizzero. Pucillo and Mrs. Johnson were the only defense witnesses who were not defendants. The improper impeachment of Pucillo made it virtually impossible for the jury to believe his trial testimony. As a result of the attempted impeachment the jury could have concluded that Pucillo, an admitted participant in the burglary, had implicated Svizzero. Because of the danger that the jury used the attempted impeachment as evidence of the guilt of the defendant, the conviction must be reversed and the cause remanded for retrial.

Reversed and remanded.

SULLIVAN, P. J. and SCHWARTZ, J., concur.