**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Doris A. JACKSON,
Defendant-Appellant.**

**No. WD32364.**

Missouri Court of Appeals,
Western District.

Dec. 22, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 26, 1982.

---

Thomas J. Cox, Jr., Joseph K. Lewis, Jr., Kansas City, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, Carl S. Yendes, Asst. Atty. Gen., Kansas City, for plaintiff-respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

DIXON, Judge.

Defendant appeals her jury conviction for class C felony of stealing. Section 570.030 RSMo 1978. Sentence of eight years was imposed by the trial court upon a finding that defendant was a persistent offender. § 558.016 RSMo 1978.

The defendant claims error in the admission into evidence of the articles stolen contending the search and seizure of the articles was improper. Defendant also asserts the court erred in permitting the state to amend the information before trial to allege she was a persistent offender. Finally, defendant urges the evidence was insufficient to show she was a persistent offender.

The sufficiency of the evidence of the offense is not in question. Defendant and another black female entered the Harzfeld store in Columbia, Missouri and began trying on expensive dresses. Both were clad in what were described as tent dresses. The employees' suspicions were aroused by the manner of the two black females, their dress, and the fact they barred entrance to the dressing room by the clerk. The employees kept the pair under surveillance and observed them enter a restroom and leave the store.

After the pair left, the employees discovered ten "no goes" in the trash in the restroom. "No goes" are magnetic devices affixed to garments which, if not detached, cause an alarm to sound if taken through the entrance to the store. The removal of "no goes" is ordinarily effected by a special device with which the sales clerk removes a metal nail or pin. Those found in the trash had been cut by some other device. A pair of metal clippers was found in the coat pocket of defendant's companion.

The police were called and an employee, who indicated she could identify the car the defendant and her companion had entered upon leaving Harzfelds, went with an officer in search of the vehicle. The vehicle was located in front of another store and was kept under surveillance.

The defendant and her companion were taken into custody outside of a third store where an employee, alerted by Harzfelds of the events, reported the presence of the two black women in the store. The vehicle was sometime later towed to the police station and searched. The merchandise missing from Harzfelds was found in the trunk. The defendant was positively identified by two witnesses from Harzfelds as one of the women who were followed to the rest room where the "no goes" were found. Another witness said the defendant and her companion were standing by the searched car and one of them checked to see if the trunk was secured.

The defendant told the police she had no knowledge of the searched car, a blue Mustang, but had come to Columbia in a green Datsun. On the hearing on the motion to suppress she denied this and said she came to Columbia with Alice Jackson, her companion in the blue Mustang.

█ The first contention of the defendant—that the search of the blue Mustang was improper—is easily laid to rest. When the evidence seized was offered, the defendant not only failed to object, but affirmatively stated that the defendant had no objection. Failure to object when the evidence was offered results in a failure to preserve the issue for review. *State v. Yowell*, 513 S.W.2d 397 (Mo.banc 1974); *State v. Simone*, 416 S.W.2d 96 (Mo.1967). In this case, the defendant, as a matter of tactics, apparently believed no objection should be made since the officer had already recited the defendant's denial of any connection with the blue Mustang.

█ Defendant's second contention is that the trial court erred in permitting the state to amend the information to include allegations of prior offenses, bringing the defendant within the purview of the Persistent Offender Act. § 558.016 RSMo 1978. There was no amendment of the information relating to the elements of the offense of stealing, and the amendment was made prior to the swearing of the jury. The cases cited by the defendant all involved changes in the elements of the offense or a change in the nature of the offense and are, therefore, not in point. The invocation of the Persistent Offender Act does not create a different or additional charge, *State v. Leake*, 608 S.W.2d 564 (Mo. App.1980), and an amendment of the charge with respect to the particulars of the offenses relied on to prove the defendant a persistent offender even after verdict has been permitted. *State v. Byrnes*, 619 S.W.2d 791 (Mo.App.1981). These rulings are consistent with the rationale of cases decided under the old Second Offender Act. See *State v. Wilson*, 544 S.W.2d 859 (Mo. App.1976).

█ The defendant's final contention is that proof of persistent offender status failed because the state failed to prove defendant was "placed on probation, parole, fined or imprisoned." The simple and complete answer to this contention is that, unlike the old Second Offender Act from which the quoted language is drawn, Section 558.016 makes no such requirement.

The judgment and conviction are affirmed.

All concur.