STATE of Missouri,
Plaintiff-Respondent,

v.

William TYGART, Defendant-Appellant.

No. 13329.

Missouri Court of Appeals,
Southern District,
Division One.

May 30, 1984.

ing in Texas. It also alleged that on March 21, 1974, defendant was found guilty of the felonious possession of restricted drugs in Jackson County. An earlier information pleaded the Texas conviction and also pleaded that on March 21, 1974, defendant was found guilty in Jackson County of the felony of carrying a concealed weapon.

Defendant's first point is that the trial court erred in finding him to be a persistent offender for these reasons: (1) it was improper for the trial court to permit the information to be amended to state that the Missouri conviction was for possession of restricted drugs rather than, as previously charged, for carrying a concealed weapon; (2) the evidence was insufficient to identify defendant as the person who committed the Texas felony; (3) it was improper for the trial court to inform the prosecutor of a typographical error with respect to the dates of the Texas offense and conviction because, in so doing, the trial court "laid aside its detached impartiality"; (4) defendant was deprived of his right to trial by jury in that the jury was not allowed to decide the fact issue of whether the defendant was the person convicted of the prior crimes.

On the morning of the trial, and before it began, defense counsel [2] was given a copy of the amended information. Counsel requested, and was granted, a brief recess so he could discuss the amended information with the defendant. At the conclusion of that recess defense counsel stated: "We have had an opportunity to look at the amended information and we will waive a formal reading of it." The state then offered, and the court received into evidence, state's Exhibit 1, an authenticated and certified copy of the Texas conviction, and state's Exhibit 2, an authenticated and certified copy of the Missouri conviction. Defense counsel made no objection to either exhibit.

H. Jack Hoke, Wood, Hudkins & Hoke, Springfield, for defendant-appellant.

John Ashcroft, Atty. Gen., Deborah Neff, John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Presiding Judge.

A jury found defendant William Tygart guilty of selling marijuana and he was sentenced to 30 years' imprisonment. Defendant appeals.

The date of the offense was February 20, 1981. Two days before the trial the state filed an amended information charging that defendant was both a prior drug offender [§ 195.200.1(5) ] [1] and a persistent offender [§ 558.016.3]. That information alleged that on October 31, 1960, defendant pleaded guilty to the charge of felonious steal-

1. All references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

2. Defendant's counsel on appeal did not represent him in the trial court.

After voir dire examination, and outside the presence of the jury, the court held a hearing with respect to the prior convictions. The court called the prosecutor's attention to the fact that, according to Exhibit 1, the date of the Texas offense was October 31, 1969, and the date of the guilty plea was March 16, 1970, and said, "Obviously your date in the information is 10 years off."

The prosecutor then requested leave to amend the information to show the correct dates and the request was granted. The prosecutor commented, without denial from defense counsel, that "in the course of pretrial discovery, this information was disclosed to the defendant. He was aware what the document stated and it was a typographical error obviously."

The court inquired of defense counsel whether he wanted to be heard on the request to amend by interlineation and counsel replied, "Well, I think basically, your Honor, it's too late to do so. The jury has been sworn, ready to go." Defense counsel made no objection to the request to amend nor was there a claim or showing of prejudice in permitting it.

█ "Any information may be amended ... at any time before verdict or finding if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced." Rule 23.08. The invocation of the Persistent Offender Act does not charge a different or additional offense. *State v. Jackson*, 627 S.W.2d 880, 882 (Mo.App.1982); *State v. Leake*, 608 S.W.2d 564, 565[1] (Mo.App. 1980). In the absence of a claim or showing of prejudice, the trial court did not err in permitting the state, on the morning of the trial, to amend the information to charge the defendant with being a persistent offender or prior drug offender. *State v. Goree*, 633 S.W.2d 758 (Mo.App.1982); *State v. Porter*, 619 S.W.2d 892 (Mo.App. 1981). See also *State v. Wooten*, 606 S.W.2d 810 (Mo.App.1980). Further, where an information adequately charges the defendant with being a persistent offender, the trial court may permit the information

to be amended so as to correct the date of a prior felony conviction. Such an amendment does not prejudice the defendant. *State v. Reid*, 645 S.W.2d 736, 737[2] (Mo. App.1983). Defense counsel, who made no objection to the amendment, made the inaccurate statement that it came too late because the jury had been sworn. Rule 23.08 permits the information to be amended at any time before verdict or finding and this amendment was made before the trial court made its findings with respect to the prior convictions and before the verdict.

█ The trial court properly permitted the information to be amended by alleging that the Missouri conviction was for possession of restricted drugs and deleting the reference to the conviction for carrying a concealed weapon.

In attacking the sufficiency of state's Exhibit 1 to show defendant's Texas conviction, defendant's brief states that the exhibit "consists of an authenticated judgment from State of Texas for one William Earl Tygart; the records from Texas contain no further information from which the trial court could conclude that the defendant and William Earl Tygart were one and the same person nor did the state present any evidence in this regard."

█ The instant information named defendant as William Tygart. The Texas judgment named him as William Earl Tygart. State's Exhibit 2, the Missouri conviction which defendant does not challenge, names the defendant as William E. Tygart. Where defendant's first name and last name are the same as the first name and last name shown on the record of the previous conviction, the state has made a prima facie showing of identity. *State v. Michael*, 361 S.W.2d 664, 666 (Mo.1962); *State v. McMillan*, 593 S.W.2d 629, 635[12] (Mo.App.1980). In *McMillan* the court said: "A person's middle name has little, if any, legal significance." Defendant made no claim in the trial court that he was not in fact the person named in the Texas conviction and he offered no evidence to refute the state's prima facie showing.

The evidence was sufficient to sustain the finding of the trial court that defendant was the person named in the Texas conviction. *State v. Fields,* 616 S.W.2d 86 (Mo. App.1981); *State v. Patterson,* 598 S.W.2d 483, 489[14] (Mo.App.1980).

It should be pointed out that defendant's status as a prior drug offender, § 195.200.-1(5), was proven by the showing of the Missouri conviction, state's Exhibit 2, the adequacy of which defendant expressly concedes. That conviction, standing alone, authorized the punishment which was imposed.

This court holds that the evidence was sufficient to show that defendant was the person who committed the Texas felony.

■ Defendant's contention that the trial court erred in informing the prosecutor of a typographical error with respect to the dates of the Texas offense and conviction is frivolous. The court's comment, made outside the presence of the jury, was no doubt prompted by his comparison of state's Exhibit 1 with the amended information. Defense counsel made no objection to the court's comment at the time it was made and thus did not preserve the point for review. *State v. Roddy,* 604 S.W.2d 32, 33 (Mo.App.1980).

■ The general rule is that the trial court's remarks or suggestions, made outside the presence of the jury, do not deny the defendant a fair and impartial trial. *State v. Newberry,* 605 S.W.2d 117, 124[11] (Mo.1980). The trial judge did not act improperly by suggesting to the prosecutor, outside the jury's presence, that an obvious typographical error be corrected. Indeed he would have been derelict in his role if he had not volunteered the suggestion.

In receiving and determining the sufficiency of the evidence concerning the prior conviction the trial court followed the procedure prescribed by § 195.200, par. 7, and § 558.021.1, par. 2. Defendant claims that he was deprived of his right to trial by jury, Art. 1, § 18(a), Mo. Const., in that the jury was not allowed to decide the fact issue of whether defendant was the person convicted of the prior crimes. Defendant, in effect, seeks to challenge the two statutes.

■ Cases involving the validity of a statute of this state are within the exclusive appellate jurisdiction of the supreme court, Art. 5, § 3, Mo. Const., but defendant's failure to preserve the issue makes it unnecessary for this court to transfer this appeal to that tribunal. To preserve a constitutional issue for appellate review it must be raised at the earliest time consistent with good pleading and orderly procedure. *State v. Flynn,* 519 S.W.2d 10, 12[3] (Mo.1975). Defendant failed to challenge the constitutionality of either statute prior to filing his motion for new trial and thus failed to preserve these issues for appellate review. *State v. Harrelson,* 636 S.W.2d 83, 87[6] (Mo.App.1982). Defendant's first point has no merit.

■ Defendant's second point is that the trial court erred in sustaining the prosecutor's objection to a question posed by defense counsel to the veniremen during voir dire. Defendant's brief fails to set forth the question, although it describes it as "a bit inarticulate" and then, somewhat inaccurately, paraphrases it. The ground of the prosecutor's objection was that the question was misleading. This court's gratuitous examination of the transcript shows that the question, set out marginally,[3] was in fact misleading. Defense counsel made no effort to restate the question nor did the trial court deprive him of the opportunity

**3.** "[The prosecutor] asked you a question and I don't know if I can phrase it exactly as he did, but basically he asked you, he said, 'If the State presents evidence that this drug sale took place but the defendant wasn't there,' I think he read you a bit of the instruction, 'do all of you still think you can convict him if he was aiding or was *responsible for that?'* I want to turn that around and I want to ask you to search your souls, hearts and consciences on this one. If he doesn't prove, in your opinion, that he did this, will any of you have any problem accepting the concept that this defendant was involved in a discussion about these matters, wasn't there at the time of the sale, any of you have a problem with that concept?"

to do so. Defendant's second point has no merit.

Defendant's third point is that the trial court erred in permitting the state to impeach defense witness Billy Johnson by cross-examining him with regard to Johnson's guilty plea proceedings and by introducing portions of those proceedings consisting of statements made by the prosecutor, coupled with Johnson's silence and failure to deny the statements. Defendant also asserts that the state improperly used that evidence as substantive evidence of defendant's guilt.

The state's case-in-chief showed that on February 20, 1981, trooper Ralph Sturdevant, of the Missouri Highway Patrol, and officer Linda Kurtz, of the Missouri State Water Patrol, were working "undercover" in drug investigations. On that date Sturdevant bought marijuana from Billy Johnson. Sturdevant, officer Kurtz, Johnson, defendant, and Danny Thomas (an informant) were together minutes before the sale.

Defendant asked Sturdevant if he wanted to buy some marijuana. When Sturdevant said that he did, defendant and Johnson drove out to a bridge in the country. Sturdevant, Kurtz, and Thomas followed in another vehicle. Johnson went under the bridge and obtained a large trash bag and opened it for Sturdevant's inspection. Sturdevant recognized the substance as marijuana. Defendant and Sturdevant walked back to the bridge and defendant went underneath it and. returned with a similar trash bag. The bags were placed in defendant's vehicle and the group returned to town. There defendant, using contents from the bags, "rolled a cigarette, lit it and passed it around."

Defendant asked Sturdevant if he wanted to purchase some of the marijuana and Sturdevant said he would buy a quarter of a pound. Both Johnson and defendant stated they had no scales and defendant asked Sturdevant if he would buy $100 worth and Sturdevant said he would. Ten minutes later Sturdevant and Johnson left in the car and traveled a fourth of a mile. Johnson stopped the car, filled a small bag with marijuana and gave it to Sturdevant and the latter paid Johnson $100.

Defendant, understandably, does not challenge the sufficiency of the state's case to show defendant's participation in the sale.

At the trial Johnson, a defense witness, testified that he was in prison for selling marijuana to Sturdevant on February 20, 1981. Johnson's testimony was that he acted alone in making the sale and that, a week before the 20th, defendant had warned him to "steer clear of Sturdevant and don't sell nothing to him." Johnson said, "Will Tygart was nowhere around on the 20th."

During cross-examination of Johnson, state's Exhibit 4 was received into evidence without objection. When the prosecutor asked defense counsel if he wanted the exhibit passed to the jury, counsel replied, "Yes, that's fine." The exhibit consists of a transcript of Johnson's guilty plea proceedings in the case against Johnson, based on the February 20, 1981, marijuana sale to Sturdevant. Those proceedings were held May 18, 1981, almost two years before the instant trial. At the Johnson plea hearing the state was represented by assistant prosecutor Rouse. Pertinent portions of Exhibit 4 are set out marginally.[4] On

---

4. State's Exhibit 4

"The Court: [I]n paragraph 5 of your [Petition to Enter Plea of Guilty], you state that on or about February 20, 1981, I 'knowingly sold to R.E. Sturdevant marijuana.' ... When you sold this to Mr. Sturdevant, did you know what it was that—

"Johnson: Yes sir.

. . . . .

"The Court: ... Is Mr. Sturdevant a police officer?

"Prosecutor Rouse: He is an officer of the Missouri State Highway Patrol, Your Honor.

. . . . .

"The Court: Have you considered the possible defense of entrapment?

"Defense counsel: Your Honor, the first time I talked with the defendant we did discuss it to a certain extent and at that time we agreed not to raise the defense, but we did discuss it.

"The Court: Of course, you understand when the sale is made to an officer, a police officer—

cross-examination Johnson testified that at the time he pleaded guilty to selling the marijuana he told the judge that he, Johnson, sold it for a friend. He said that he handed Sturdevant the marijuana "but did it for the other guy." Asked whether the "other guy" was Tygart, Johnson said, "No." Using state's Exhibit 4 the prosecutor then asked the witness if he remembered prosecutor Rouse stating, at Johnson's plea hearing, "I can't go as far as to say [Johnson] was assisting a friend. He was there with Mr. Tygart and he was actually participating in the sale." Johnson's response was that he did not remember that being said, that he did not remember disagreeing with anything that prosecutor Rouse said, and that possibly Rouse made that statement. Johnson also said that he disagreed with the fact that the "friend" was Tygart.

All of the foregoing cross-examination was elicited without objection.

Defendant argues that "the statements contained in state's Exhibit 4 go beyond

> "Johnson: I am guilty of that. I did accept the money and I did hand him the marijuana, but I didn't—*I just done it for this other guy, you know,* and he told me to go over to his car and get it out ...
>
> . . . . .
>
> "The Court: Do you have any comment on the factual basis on this?
> "Prosecutor Rouse: Your Honor, he pretty much hit it on the head. There were some negotiations with Mr. Johnson and with another person. They did go out there. There was a large quantity of marijuana taken in plastic bags. It's true that Mr. Sturdevant took the money from Mr. Johnson or—took the marijuana from Mr. Johnson, and also paid Mr. Johnson.
> "Johnson: Yes, sir. Mr.—
> "The Court: Apparently you would not disagree that he was acting for a friend, assisting a friend, would you say?
> "Prosecutor Rouse: Well, you know, I can't go so far as to say that he was assisting a friend. I can't go that far, Your Honor. *He was there with Mr. Tygart and he was actually participating in the sale.* I am not willing to go so far as to say he was just acting for a friend.
> "The Court: Even if he was, would that make any difference?
>
> . . . . .
>
> "The Court: In my opinion, now the fact that a friend had you do this for him, still, you were part of it and acted with him?

impeachment purposes and were used by the state as substantive evidence of defendant's guilt. The state used Johnson's silence as evidence of defendant's guilt, arguing that if the statements were not true Johnson would surely have spoken up and said so." Defendant relies primarily [5] on *State v. Granberry,* 491 S.W.2d 528 (Mo. banc 1973). In *Granberry,* a plurality opinion in which three judges concurred, two concurred in the result, and two dissented, the court adhered to the general rule announced in *State v. Kinne,* 372 S.W.2d 62 (Mo.1963), that evidence of extrajudicial statements made by a witness who is not a party and whose declarations are not binding as admissions is admissible only to impeach the witness, if inconsistent with his testimony, and is not competent as substantive evidence of defendant's guilt.

In *Granberry* the principal witness for the state was one Hackett. On direct examination by the prosecutor, Hackett exculpated the defendant. Claiming surprise,

> "Johnson: Yes, sir, I am guilty of—that much, I did. . . .

5. Defendant also relies on *State v. Davis,* 566 S.W.2d 437 (Mo. banc 1978), also a plurality opinion. In *Davis,* one Moore was called as a "court's witness." Moore's direct testimony exonerated the defendant. The prosecutor interrogated Moore with regard to prior inconsistent statements which implicated the defendant. In final argument the prosecutor used Moore's prior statements as substantive evidence. Although the argument was not objected to, three judges held that the argument constituted plain error, two judges concurred in the result, and two dissented.

In *State v. Darty,* 619 S.W.2d 750, 753 (Mo. App.1981), the eastern district, discussing *Granberry* and *Davis,* said that the failure of the court in *Granberry* to discuss "plain error" indicated that the error had been properly preserved. The court also said: "We do not conclude that State v. Davis, supra, compels us to hold that such an argument is always plain error requiring reversal." In *Darty* a similar argument by the prosecutor was held not to constitute plain error.

For limitations on the authoritative effect of a supreme court opinion which fails to receive full concurrence of a majority, see *Musgraves v. National Dairy Products Corporation,* 400 S.W.2d 93, 96[2] (Mo.1966) and *Wilcox v. Coons,* 359 Mo. 52, 220 S.W.2d 15, 20 (Mo. banc 1949).

the prosecutor interrogated Hackett with regard to prior extrajudicial statements which he had made which incriminated the defendant. The prior statements were admissible only for the purpose of impeachment and could not be used as substantive evidence of the defendant's guilt. Since the prior statements were the only evidence relied on by the state to prove guilt, the conviction was set aside. In the case at bar, however, the state's evidence, totally aside from that elicited during Johnson's cross-examination, was clearly sufficient to support the conviction and defendant does not claim otherwise.

 Johnson testified on direct examination that he acted alone in making the sale to Sturdevant. Those portions of state's Exhibit 4 containing statements by Johnson that, in making the sale, he was acting with a friend and "just done it for this other guy," were admissible, for the purpose of impeachment, as prior inconsistent statements.[6] Defense counsel, who made no objection at all, also failed to request a limiting instruction telling the jury that the prior inconsistent statements could be considered only for that purpose and not on the issue of guilt. MAI–CR2d 3.52 would have so informed the jury, but the trial court was under no duty to give that instruction because defendant did not request it.

If there had been a timely objection to that portion of state's Exhibit 4 containing prosecutor Rouse's statement that Johnson "was there with Mr. Tygart" and a timely objection to Johnson's testimony, on cross-examination, that he remained silent when that statement was made, or at least did not remember disagreeing with it, authority exists that such evidence was inadmissible. *People v. Svizzero*, 84 Ill.App.2d 251, 228 N.E.2d 604 (1967); see also the companion case of *People v. Yocca*, 84 Ill. App.2d 423, 228 N.E.2d 599 (1967). In *Svizzero*, defendant was charged with bur-

glary. Defense witness Pucillo, who had previously pleaded guilty to the same burglary, was cross-examined by the prosecutor on the basis that his testimony was inconsistent with what had taken place at the time he pleaded guilty. At that time Pucillo stood silent in the presence of a statement by the state's attorney that Pucillo and Svizzero committed the burglary, and Pucillo's attorney had agreed that the prosecutor's statement was accurate.

In holding that the evidence was inadmissible, even for impeachment purposes, the court said that neither Pucillo nor his attorney had the right to stipulate to Svizzero's guilt and that Svizzero could not be bound by what either said outside his presence. The court also said that Pucillo's failure to assert Svizzero's innocence was not a tacit admission that he believed him guilty; that the theory of the tacit admission rule is that a person will naturally deny untrue assertions made in his presence and against his interests; that since Pucillo had determined to plead guilty, his own interests were not affected by the prosecutor's statement implicating Svizzero; that Pucillo was under no obligation to interrupt the prosecutor and had no motive personal to himself to contradict the charges against Svizzero; that Pucillo's silence could not be considered as an implied assent. See also 20 A.L.R.4th 245 (impeachment of defense witness in criminal case by showing witness's prior silence or failure or refusal to testify).

Rule 30.20 permits this court to consider "plain errors affecting substantial rights" when the court finds that "manifest injustice or miscarriage of justice has resulted therefrom." "The general rule concerning the application of the plain error rule is that it is discretionary ... should be used sparingly, and is limited to cases where there is a strong clear showing of manifest injustice. . . . When guilt is established by overwhelming evidence, no injustice will re-

---

6. Where, as here, Johnson admitted making the prior inconsistent statements, the general rule is that it is unnecessary and improper for the state to adduce independent proof that he made

them, *State v. Spencer*, 561 S.W.2d 379 (Mo.App. 1977), but there was no such objection and the proof was merely cumulative.

sult from refusal to invoke the plain error rule.... In addition, defendant has the burden of proving that the alleged error amounted to manifest injustice." *State v. Tyler*, 622 S.W.2d 379, 383 (Mo.App.1981) (citing authorities).

■ The issue is, did the trial court commit plain error in receiving the evidence of prosecutor Rouse's statement with regard to Tygart's involvement and Johnson's silence in response thereto?

Here there was clear evidence of defendant's guilt. Defendant offered three alibi witnesses, other than Billy Johnson, and their testimony was vague. The challenged testimony was not vital to the state's case and, considered overall, it was used primarily, if not solely, to impeach Johnson. This court holds that the trial court did not commit plain error in receiving it. Defendant's third point has no merit.

■ Defendant's fourth point challenges a portion of the prosecutor's final argument in which he alluded to Johnson's guilty plea hearing, prosecutor Rouse's statement, and Johnson's silence. Defendant advances the same contentions which he made under his third point. No such objections were voiced at the time the argument was made. This court agrees with the state that, viewed in context, the argument used the evidence for impeachment purposes only. The trial court did not commit plain error in permitting the argument. Defendant's fourth point has no merit.

Defendant's fifth point is that the trial court erred in overruling defendant's objection to a portion of the prosecutor's closing argument concerning "people that want drugs breaking into homes" and "drugs being sold to school children," because there was no evidence of any such activity on the part of the defendant and the argument was inflammatory and calculated to arouse the "hostilities of the jurors" and instill a fear in their minds that their safety or the safety of their families could be in danger if defendant was acquitted.

During the course of the prosecutor's final argument the following occurred:

"[The prosecutor]: They ask you what kind of a man Will Tygart was. I'll tell you what kind of a man he is. You know what happens, somebody needs dope, they need the money, they break into a clinic, houses....

"[Defense counsel]: That's not proper argument.

"[The prosecutor]: It's an inference from the evidence.

"[Defense counsel]: It's not an inference from anything. Improper argument.

"The court: I think the objection will be overruled.

"[The prosecutor]: People that want dope break into our houses and they steal our property. They sell it to our kids on the way to school. Will Tygart is a part of that. He was a part of that drug transaction and a part of a lot bigger one that was going to take place.[7] Two officers risked their lives, went out there with people who were armed so that people like Will Tygart can be put away, so that people like us can enjoy our homes and send our children to school without being worried about some pusher trying to sell them something on the way."

■ "An objection that particular argument is 'improper argument' constitutes no valid objection. The attention of the court must be called to the specific grounds upon which the objection is based." *State v. Allison*, 300 S.W. 1069, 1071[8] (Mo.1927). "[T]he trial court is vested with broad discretion in controlling argument of counsel. Substantial latitude is allowed in summation, and when manifest injustice is the standard of review, Rule 29.12(b), improper argument will justify reversal only if its effect is decisive on the jury's determina-

7. This is a reference to evidence that Sturdevant told Billy Johnson, when the $100 purchase was made, that he, Sturdevant, "wanted to have a little bit of it to take up to his home town and let the people try it out. If they wanted it, they would come back and make the whole deal for all of it, 55 pounds, which was worth about $18,000."

tion; and the defendant is saddled with the burden of demonstrating such effect." *State v. Wren,* 643 S.W.2d 800 (Mo.1983). It is true that an argument may be so prejudicial that a mere general objection, or even none at all, is sufficient to require affirmative action on the part of the trial court. *State v. Holzwarth,* 520 S.W.2d 17, 22[5] (Mo. banc 1975).

■ The specific objections which defendant now levels against the prosecutor's argument were not presented to the trial court at the time that argument was made. The only objection made was "improper argument," which was merely a general objection, and thus an insufficient one.

The prosecutor's statements were to the general effect that drug users wanting dope will burglarize houses and that drug sellers will make sales to school children. There was no specific charge that the defendant himself had committed burglary or had made such sales to children. In this era of widespread drug offenses it is doubtful that the prosecutor's remarks imparted any information to the jurors which they did not already possess. In order for defendant's fifth point to attain validity as a matter of plain error, this court must find that "manifest injustice or miscarriage of justice" has resulted from the prosecutor's remark. The instant record does not warrant that finding. See *State v. Ashley,* 616 S.W.2d 556, 560 (Mo.App.1981); *State v. Woodward,* 587 S.W.2d 287, 291 (Mo.App. 1979). Defendant's fifth point has no merit.

The judgment is affirmed.

GREENE, C.J., and TITUS and CROW, JJ., concur.