**STATE of Missouri, Respondent,**

v.

**James Lee GRANBERRY, Appellant.**

No. 57477.

Supreme Court of Missouri,
En Banc.

March 14, 1973.

John C. Danforth, Atty. Gen., Vincent F. Igoe, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

Alan G. Kimbrell, Asst. Public Defender, Clayton, for appellant.

DONNELLY, Judge.

Appellant, James Lee Granberry, was convicted of murder in the first degree by a jury in the Circuit Court of St. Louis County, Missouri, and his punishment was assessed at death. Following rendition of judgment and imposition of sentence an appeal was perfected to this Court.

The appeal having been taken to this Court prior to January 1, 1972, the effective date of new Article V of the Constitution, we have jurisdiction pursuant to then Art. V, § 3 of the Missouri Constitution, V.A.M.S.

Appellant was charged as being a participant in the occurrences of December 12, 1969, which are described in State v. (Darryl Samuel) Granberry, Mo.Sup., 484 S. W.2d 295.

The determinative issues on this appeal involve the questioning at trial of witness Kenneth P. Hackett.

On January 9, 1970, an indictment was returned charging James Granberry, Kenneth P. Hackett, and Darryl Samuel Granberry with the murder of Officer Wilbert Downey. On October 8, 1970, Hackett made a video-taped statement and the State dismissed its case against Hackett.

At appellant's trial, Hackett was called as a witness by the State and testified, in part, as follows:

"Q   All right.   Now, directing your attention back to December 11, 1969, in that—during that evening—did you at any time meet with Jeffery Winters and Jerry Winters? A   Yes, sir.

"Q   Where did you meet?   A   At my house.

"Q   When Jerry and Jeffery were there was Darryl there at any time on the evening of December 11?   A   He was already with me.

"Q   I beg your pardon?   A   He was already with me.

"Q   And did James Granberry, the man that is in court here, did he join you at any time at home?   A   No, sir.

"Q   All right.   Now, did you meet James Granberry later that evening?

"A   No, sir.

"Q   When did you meet him, James Granberry?   A   We didn't.

"Q   I beg your pardon?   A   We didn't meet him.

"Q   You didn't meet him?   A   No, sir.

"Q   Did you pick him up anywhere? A   No, sir.

"Q   Well, did you—at any time on the early morning of December 12, 1969, was James with you? A   No, sir.

"Q   Was James with you any time when you went out to the Clark Filling Station?

"MR. COLEMAN: I object to the leading form of the question, Your Honor.

"THE COURT: Sustained.

"MR. SETTICH: I beg your pardon?

"THE COURT: Sustained at this time.

"Q   (By Mr. Settich) What kind of car did Darryl have?

"A   A '63 Pontiac.

"Q   I will show you the photograph here that has been marked as State's Exhibit 10 and ask you to

take a look at that. Do you recognize what is in that photograph? A Yes, sir.

"Q And what is that? A A '63 Pontiac.

"Q Whose car is that? A My cousin's.

"Q And which cousin? A Darryl.

"Q All right. Now, on the early morning of December 12, 1969, were you in that Pontiac? A Yes, sir.

"Q And who else was with you?

"A Jeffery and Jerry Winters and Darryl Granberry, Charles Bern.

"THE REPORTER: How do you spell Bern?

"THE WITNESS: B-e-r-n.

"Q (By Mr. Settich) How about James? Was James with you?

"A No, sir."

The attorney for the State then claimed surprise, asked for, and was given, leave to cross-examine witness Hackett, and proceeded to ask him about prior statements (given to an investigator, two attorneys for the State, a police detective, in a deposition taken in a case involving other defendants, and in the video-taped statement) wherein he implicated appellant as a participant in the crime.

In closing argument to the jury, the attorney for the State said, in part: "I suggest to you that there is something to be gained from Hackett's testimony. I suggest to you that we don't just forget about their testimony. Hackett said five times, five times on a video tape and in the presence of his lawyer. Mr. Coleman leaves that out. He says the defense and the prosecutors—there was a Mr. Bright there and a prosecutor and Hale Brown. Hackett's lawyer was there when the video tape was taken. He said that James Granberry went inside, and he said that he was along,

and he was in that car that night, and he committed the robbery. He said in the deposition under oath, Hackett's deposition, James Granberry—he went along—James Granberry—James—James—under oath. Just before this trial, Hackett told Mr. Edward, the investigator in my office, 'James Granberry,' during the week, and Hackett admitted this on the witness stand. He told Mr. Glynn, 'James Granberry.' And he told Mr. Settich the same thing, five times, that it was James Granberry who was involved."

The rule of evidence which governs our disposition of this case has been denominated the *orthodox view*, was reaffirmed as the law in Missouri in State v. Kinne, Mo.Sup., 372 S.W.2d 62, 68 (1963), and is stated in 133 A.L.R. 1454, at 1455, as follows:

"The general rule is almost universally recognized that evidence of extrajudicial statements made by a witness who is not a party and whose declarations are not binding as admissions is admissible only to impeach or discredit the witness, and is not competent as substantive evidence of the facts to which such statements relate."

We must conclude on the record in this case that the prior statements attributed to witness Hackett were not used by the State to impeach Hackett's credibility but, on the contrary, were used as substantive evidence to show the truth of the matters asserted in such statements given by Hackett on prior occasions. The judgment of conviction cannot be permitted to stand.

In State v. Kinne, *supra*, in an opinion written for Division Number Two of this Court, Judge Barrett noted the rejection of the *orthodox view* by Wigmore and McCormick, and extensively reviewed the twists and turns in the Missouri case law on the question. Of particular note is the fact that this Court, sitting en Banc in 1935, in the case of Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400, adopted a po-

sition which was accurately analyzed by Judge Bennick in Woelfle v. Connecticut Mutual Life Insurance Company, 234 Mo. App. 135, 151, 112 S.W.2d 865, 874, as follows:

"In Pulitzer v. Chapman, supra, our Supreme Court did lay down the rule that, so far as concerns the impeachment of a witness by his deposition in the cause, not only may he be impeached by contradictory statements which appear therein, but his contradictory statements may also be accepted as substantive proof of the facts stated so far as they are competent and have probative value. This for the reason that testimony in a deposition is given both under oath and subject to the right of cross-examination, and is therefore not to be characterized as hearsay. However, it is to be noted that the court in its opinion specifically refused to hold that probative value should likewise be accorded to prior extrajudicial statements, and we are therefore left to follow the usual rule in such respects, which is that such statements are admissible only for the purpose of impeachment, assuming, of course, that the case is one where the impeachment of the witness is in order, a situation which we have shown did not exist in the instance under consideration."

In 1945, a new provision authorizing depositions in felony cases (Art. I, § 18(b)) was made a part of our Constitution. It reads as follows:

"Upon a hearing and finding by the circuit court in any case wherein the accused is charged with a felony, that it is necessary to take the deposition of any witness within the state, other than defendant and spouse, in order to preserve the testimony, and on condition that the court make such orders as will fully protect the rights of personal confrontation and cross-examination of the witness by defendant, the state may take the deposition of such witness and either party may use the same at the trial, as in civil cases, provided there has

been substantial compliance with such orders. The reasonable personal and traveling expenses of defendant and his counsel shall be paid by the state or county as provided by law."

We note that in 1967, the California legislature rejected the *orthodox view* (See People v. Green, 70 Cal.2d 654, 75 Cal. Rptr. 782, 451 P.2d 422, and California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L. Ed.2d 489). In 1969, Wisconsin and Kentucky, at least to some extent, rejected the *orthodox view* by court decision (Gelhaar v. State, 41 Wis.2d 230, 163 N.W.2d 609; Jett v. Commonwealth, Ky., 436 S.W.2d 788).

■ We decline the opportunity to reject the *basics* of the *orthodox view* but believe the interests of the public and the accused will be better served and protected if we adopt the following positions:

(1) we reaffirm the Pulitzer v. Chapman position;

(2) if a witness is present at trial (whether he testifies at trial or not), his deposition, if taken by the State under the provisions of Art. I, § 18(b), supra, is not made inadmissible by the hearsay rule, and, so far as it is admissible under other rules of evidence, may be used by the State and "accepted as substantive proof of the facts stated" in the deposition; and

(3) if a witness is not present at trial, and it appears he is dead or that the State has made a good-faith effort to obtain his presence at trial (State v. Brookins, Mo. Sup., 478 S.W.2d 372, 375), his deposition, if taken by the State under the provisions of Art. I, § 18(b), supra, is not made inadmissible by the hearsay rule, and, so far as it is admissible under other rules of evidence, may be used by the State and "accepted as substantive proof of the facts stated" in the deposition.

The judgment is reversed and the cause remanded.

HENLEY, J., concurs.

SEILER, J., concurs in separate concurring opinion filed.

FINCH, C. J., concurs in result in separate concurring opinion filed.

HOLMAN, J., concurs in result and concurs in separate concurring opinion of FINCH, C. J.

MORGAN, J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents in separate dissenting opinion filed and concurs in dissenting opinion of MORGAN, J.

SEILER, Judge (concurring).

In deciding whether we should change our rule of evidence about prior inconsistent statements not being admissible as substantive evidence, we should not let the fact this happens to be a criminal case where the orthodox rule would have been adverse to the state's effort to hold in line their witness, described as a "joint participant [who] decides at the last moment to help the defendant and changes his story after the state puts him on the stand", be a decisive factor. We must remember that if we change the rule, it will not operate only in cases where state witnesses change their story. It will operate across the board, in all types of litigation, civil as well as criminal, and means that every conceivable kind of "helpful" extra-judicial statement will be admissible as proof of the truth of its contents, so long as someone can be produced who will say that the witness-declarant so stated at an earlier time.

The primary rationalization for this drastic change is that the witness-declarant is present in court and subject to cross-examination, and thus, to quote Wigmore,

"There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the hearsay rule has been satisfied."

Much as I hesitate to have the temerity to question the legal reasoning of the renowned Wigmore, I must say this is an illusion and will not withstand close examination. Its true nature has been shown by the Supreme Court of Michigan in Ruhala v. Roby, 379 Mich. 102, 150 N.W.2d 146 (1967), where the witness said at the scene following an automobile accident that a man, not a woman, was driving the car. At the trial, in the damage suit for the woman's death, the witness, however, was going to testify the woman was driving and the plaintiff wanted to offer, substantively, the prior inconsistent statement of the witness that the man was driving. The Michigan court adhered to the orthodox rule and refused to admit it substantively. Substantially the same authorities as here were cited—Wigmore, McCormick, and the proposed Uniform Evidence Rules. The court pointed out the fallacy of the claim that the hearsay rule was satisfied by the witness-declarant being available for cross-examination, saying at l.c. 156: "The difficulty with this argument is that it does not recognize the real nature of cross-examination. Cross-examination presupposes a witness who affirms a thing being examined by a lawyer who would have him deny it, or a witness who denies a thing being examined by a lawyer who would have him affirm it. Cross-examination is in its essence an adversary proceeding. The extent to which the cross-examiner is able to shake the witness, or induce him to equivocate is the very measure of the cross-examiner's success.

" . . . it is readily apparent that the present discussion only relates to those cases where the witness does not adopt his prior statement as true. If he refuses to adopt his prior statement as true, there can be no adversary cross-examination upon it . . . .

"It is interesting to note that Uniform Rule 63, subd. 1, silently concedes its own frailty when it makes reference to the witness being available for cross-examination 'with respect to' the prior statement and its subject matter, rather than cross-examination 'upon' the prior statement. If a prior inconsistent statement is received as substantive evidence though not adopted as true, it is thereby given a special indestructible status far superior to direct sworn testimony from the witness stand . . .

"The would-be cross-examiner is not only denied the right to be the declarant's adversary, he is left with no choice but to become the witness' friend, protector and savior. Though he may be permitted to ask questions in the form of cross-examination, the substance of his effort will be re-direct examination and rehabilitation. The reason is simple. The witness cannot recant! . . .

" . . . Stale friendly cross-examination 'with respect to' a prior extrajudicial statement is no substitute for timely, adversary cross-examination 'upon' a statement . . .."

The Michigan court then set forth a hypothetical illustration, too long to copy here, of the difference between *timely* cross-examination *upon* the prior statement and *stale* cross-examination *with respect to* the statement, demonstrating "the windmill-fighting nature of stale cross-examination with respect to the prior statement", and concluded with these words as to what can be done where *real* cross-examination is possible, 150 N.W.2d 1.c. 158: "When a cross-examiner on timely cross-examination *succeeds* in getting the witness to change his story, the integrity of the recantation is apparent, and *his original, recanted version no longer stands as substantive evidence* . . . ..

"Scholarly legal writings are useful and necessary. When they challenge the established rules, the courts have an obligation to re-examine those rules and measure the theoretical criticism against the hard facts of a living system of justice. . . ."

Trial lawyers know that what a lawyer would like to do on cross-examination is to get the witness to admit that what he said on direct examination harmful to the lawyer's client was wrong. How would that actually work in the present case if the state were permitted to use Hackett's prior statement as substantive proof that Granberry was present at the crime? The cross-examination that is available will be cross-examination by Granberry's lawyers of Hackett. The state will not try to cross-examine Hackett to destroy his prior statement that Granberry was there. This is what the state wants. But Granberry's lawyers cannot cross-examine Hackett in actual fact—all they can do is to get him to repeat what he earlier said in his testimony—that is, that Granberry was not there. They have no way to destroy his prior statement because the only way they can meet it is to have him repeat what he said on direct examination. This is not cross-examination at all, nor is there any way the witness can be subject to genuine cross-examination by the party who wants to discredit the prior statement. The gears in Wigmore's great legal engine cannot be engaged. It is cross-examination in name only and does not satisfy the purpose of the hearsay rule.

I am in favor of continuing with the orthodox rule and concur in the opinion of DONNELLY, J.

FINCH, Chief Justice (concurring in result).

While the principal opinion correctly states the present rule in Missouri with reference to use of evidence of extrajudicial statements by a witness who is not a party (the so-called orthodox rule), I have concluded that the time has come to adopt what I consider to be a better reasoned rule.

We deal with a situation wherein three people, Darryl Granberry, James Granberry and Kenneth Hackett, were indicted for murder committed in connection with a filling station holdup. Hackett made numerous statements in which he implicated both Darryl and James Granberry as having been present and participated in the holdup. Some were oral, but included therein was a video-taped statement. In addition, Hackett's deposition had been taken by defense counsel in a case involving other defendants and in that deposition he testified that James was present at the filling station and, along with Darryl, took the filling station attendant into the back room.

In this case, in which James Granberry was being tried separately for his participation, the state, in reliance on these various prior statements by Kenneth Hackett, plus reinterviews just before he testified, called him as a witness. When he was asked by the prosecuting attorney about whether James was present and participated, he testified that James was not present at any time. The state claimed surprise and was permitted to cross-examine Hackett about his various previous statements, including the video-taped statement and the deposition, but he denied those earlier statements, or in some instances said he did not remember them.

The principal opinion herein, in accordance with the rule announced by this court in State v. Kinne, 372 S.W.2d 62 (Mo. 1963), holds that these prior inconsistent statements by Hackett were admissible to impeach or discredit him as a witness, but were not admissible and competent as substantive evidence of the facts to which such statements related. The opinion concludes, based on analysis of the prosecuting attorney's argument to the jury, that the statements were used as substantive evidence to show the truth of the statements that James was present and participated, and that for this reason the conviction cannot be allowed to stand.

The present Missouri rule (as articulated in Kinne) is the so-called orthodox view and is the majority rule. However, it has been criticized for several years by most legal commentators and scholars. Dean Wigmore originally espoused the orthodox view but later concluded that it was incorrect. See IIIA Wigmore on Evidence, Chadbourne Revision, § 1018, p. 996, where he states:

"(b) It does not follow, however, that prior self-contradictions, when admitted, are to be treated as having no *affirmative testimonial* value, and that any such credit is to be strictly denied them in the mind of the tribunal. The only ground for doing so would be the hearsay rule. But the theory of the hearsay rule is that an extra-judicial statement is rejected because it *was made out of court by an absent person* not subject to cross-examination (§ 1362 *infra*). Here, however, by hypothesis the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the hearsay rule has been already satisfied. Hence there is nothing to prevent the tribunal from giving such testimonial credit to the extrajudicial statement as it may seem to deserve. Psychologically of course, the one statement is as useful to consider as the other; and everyday experience outside of courtrooms is in accord." See also note 2 on p. 996, for a more extended discussion.

Other commentators have expressed similar views. See McCormick on Evidence, § 39, p. 77, in which Professor McCormick states as follows:

"The rule against the use of prior statements substantively, then, is basically misguided, it is believed, in attempting to deny such statements the full probative effect to which they are reasonably entitled. But the attempt is in most cases ineffectual, and in the minority of cases where it is given practical effect, the incidence of the rule is harsh and haphazard. It is usually

ineffectual because ordinarily the party who proves the prior statements will have some other 'substantive' first-hand testimony of like purport with the impeaching statements to support him on the issue, and consequently the issue will be submitted to the jury for their decision on the conflicting 'substantive' evidence. The only available sanction for our rule is an instruction that the jury must not consider the prior statements of the witness as substantive evidence on the main issue, but solely as bearing on the credibility of the witness. Such an instruction, as seems to be generally agreed, is a mere verbal ritual. The distinction is not one that most jurors would understand. If they could understand it, it seems doubtful that they would attempt to follow it. Trial judges seem to consider the instruction a futile gesture. If the prior statement and the present testimony are to be considered and compared, what is the purpose? The intuitive good sense of laymen and of lawyers seems to agree that the only rational purpose is not merely to weigh the credibility of the testimony, but to decide *which of the two stories is true*. To do this is ordinarily to decide the substantive issue.

"The distinction between using a previous statement as evidence of its truth, and as evidence that the declarant in testifying differently is lying or mistaken, is surely a most artificial one. Unless the statement *may* be true, it does not have the effect of shaking the credibility of the testimony; and that it *may* be true is about all one means by accepting a statement as evidence of its truth. The notion that the judge and the jury may only say, 'We know not which story is true; we only say that the witness blows hot and cold, and hence is not to be believed in either,' demands a finical neutrality alien to the atmosphere of jury trial.

"Moreover, as suggested above, the incidence of the rule that previous statements are not substantive is arbitrary and indiscriminate. In the first place, it is practically without effect where the impeaching party does not have the burden of producing evidence on the issue to which the statement relates. If the state's only witness to a material fact in a criminal case or the plaintiff's sole witness in a personal injury case is attacked by showing his previous statement giving a different story of the alleged crime or collision, it is immaterial to the defendant whether the statement is substantive or merely impeaching. In either event, the jury can use it to cancel the effect of the witness's testimony. Thus, the impeaching statement, though not 'substantive,' may be a sufficient basis for a verdict for the defendant, while in the reverse situation the state or a civil plaintiff could not go to the jury at all on the issue if the impeaching statement of the defendant's witness were all he had. The argument seems persuasive that if the previous statement and the circumstances surrounding its making are sufficiently probative to empower the jury to disbelieve the story of the witness on the stand, they should be sufficient to warrant the jury in believing the statement itself."

In recent years, some courts, influenced by the views expressed by the legal scholars, have departed from the orthodox view. In Gelhaar v. State, 41 Wis.2d 230, 163 N. W.2d 609 (1969), the Supreme Court of Wisconsin overruled prior Wisconsin cases which held that prior inconsistent statements of a witness could not be accorded any value as substantive evidence, and stated as follows, l.c. 614:

"Thus we are now convinced that a jury should be able to consider the prior inconsistent statements of the witnesses as substantive evidence. * * *

"We are not convinced, however, that this rule should be adopted without limitation. Accordingly, we now adopt a modified form of the rule proposed by professor McCormick:

" ' "A statement made on a former occasion by a declarant having an opportunity to observe the facts stated, will be

received as evidence of such facts, notwithstanding the rule against hearsay if

" ' "(1) the statement is proved to have been written or signed by the declarant, or to have been given by him as testimony in a judicial or official hearing, or the making of the statement is acknowledged by the declarant in his testimony in the present proceeding, and

" ' "(2) the party against whom the statement is offered is afforded an opportunity to cross-examine the declarant." ' McCormick, supra, at page 82.

We also add a third condition, however, which is intended to limit the use of prior statements as substantive evidence to impeachment situations only.

", and (3) the witness has testified to the same events in a contrary manner in the present proceedings.

"In adopting the foregoing rule, we wish to point out that the A.L.I. Model Code of Evidence (1942), Rule 503, p. 231, also suggests that prior statements of witnesses be given substantive evidentiary value.

" 'Evidence of a hearsay declaration is admissible if the judge finds that the declarant
" ' *   *   *

" '(b) is present and subject to cross-examination.' "

In Jett v. Commonwealth, 436 S.W.2d 788 (Ky.1969), the court overruled earlier cases and held, l.c. 792:

"The result is that an out-of-court statement made by any person who appears as a witness, which statement is material and relevant to the issues of the case, may be received as substantive evidence through the testimony of another witness, and need not be limited to impeachment purposes. CR 43.07 therefore does not apply, though

we are of the further opinion that the same type of foundation must be laid as required by CR 43.08 in order that the witness whose testimony is to be contradicted, supplemented, or otherwise affected by the out-of-court statement may have a proper and timely opportunity to give his version or explanation of it. The same rule shall apply regardless of whether the witness whose out-of-court statement is to be proved appears as a witness for the party who intends to prove it or as a witness for the adversary party."

In California, a provision was inserted in the state's Evidence Code [1] which provides that "[e]vidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." [2]

The Supreme Court of California in People v. Johnson, 68 Cal.2d 646, 68 Cal. Rptr. 599, 441 P.2d 111 (1968), and People v. Green, 70 Cal.2d 654, 75 Cal.Rptr. 782, 451 P.2d 422 (1969), held that such statements could not be introduced under § 1235 to prove the charges against the accused without violating his right of confrontation under the Sixth Amendment to the Constitution of the United States. On certiorari in the Green case, the Supreme Court of the United States in California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489, vacated the reversal and remanded the case to the Supreme Court of California to enable it to pass on other issues raised by the appellant but not passed upon by the California Supreme Court. In a well considered opinion by Mr. Justice White, the Supreme Court of the United States held that defendant's constitutional right to confrontation was not necessarily inconsistent with the state's decision to change its hearsay rules to reflect the minority or Wigmore view. It summarized the situa-

1.  California Evidence Code, § 1235 (1966).

2.  Sec. 770 requires that the witness be afforded the opportunity to explain or

deny the statement at some point in the trial.

tion as follows, 399 U.S. l.c. 154, 90 S.Ct. l.c. 1932:

"Section 1235 of the California Evidence Code represents a considered choice by the California Legislature between two opposing positions concerning the extent to which a witness' prior statements may be introduced at trial without violating hearsay rules of evidence. The orthodox view, adopted in most jurisdictions, has been that the out-of-court statements are inadmissible for the usual reasons that have led to the exclusion of hearsay statements: the statement may not have been made under oath; the declarant may not have been subjected to cross-examination when he made the statement; and the jury cannot observe the declarant's demeanor at the time he made the statement. Accordingly, under this view, the statement may not be offered to show the truth of the matters asserted therein, but can be introduced under appropriate limiting instructions to impeach the credibility of the witness who has changed his story at trial.

"In contrast, the minority view adopted in some jurisdictions and supported by most legal commentators and by recent proposals to codify the law of evidence would permit the substantive use of prior inconsistent statements on the theory that the usual dangers of hearsay are largely nonexistent where the witness testifies at trial. 'The whole purpose of the Hearsay rule has been already satisfied [because] the witness is present and subject to cross-examination [and] [t]here is ample opportunity to test him as to the basis for his former statement.' "

Subsequently, 399 U.S. l.c. 158, 90 S.Ct. l.c. 1935, it is stated:

" * * * Viewed historically, then, there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.

"This conclusion is supported by comparing the purposes of confrontation with the alleged dangers in admitting an out-of-court statement. Confrontation: (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility."

In the recent case of McDonnell v. United States of America, 472 F.2d 1153 (8th Cir. 1973), the court, in reliance on Green v. California, supra, upholds the action of the trial court in permitting introduction of testimony of witness in prior trial of defendant after witness at this trial was evasive as to the burglary and defendant's participation therein and said that his memory of most of the facts about the burglary had left him.[3]

It would serve no useful purpose to lengthen this opinion by quoting more extensively from these or other decisions or from the various texts or law review articles. Suffice it to say that I conclude, after studying them, that we should overrule the cases announcing the orthodox view and adopt instead a rule substantially like that announced by the Wisconsin Supreme Court in Gelhaar v. State, supra.

In the first place, California v. Green establishes that constitutionally such change is permissible. We will not thereby violate defendant's right of confrontation and cross-examination. Secondly, according to the recognized scholars in the field of evidence, this is a sound and desirable

---

3. See also the Federal Rules of Evidence, Article VIII, Hearsay Rule 801(d)(1), and Advisory Committee Note thereto, subdivision (d), effective July 1, 1973.

change; one which satisfies the purpose for which the Hearsay rule was established. In addition, the respected American Law Institute suggests the change and the new Federal Rules of Evidence, effective July 1, 1973, are in accord. Finally, recent well considered cases which I have cited have commenced a trend in this direction.

I suggest that adequate protection of the rights of defendants does not demand retention of the orthodox rule. On the other hand, continuance of the rule permits occurrences such as happened here in which a witness who was a joint participant decides at the last moment to help the defendant and changes his story after the State puts him on the stand. Our rules should not encourage such a result and deny the jury the right to consider his prior written or recorded and sometimes sworn statements when constitutional and logical precepts do not so require.

It is to be noted that we are not considering at this time whether such testimony alone would be sufficient to support a conviction. Here, there was other evidence of defendant's guilt. Whether in a case without any other evidence the court should hold a submissible case was made is not before us. That would be decided on the record submitting such issue.

I would expand the rule as announced by the Wisconsin Court to include video-taped statements because although verbal and not signed, the statement is actually recorded and the jury may hear the voice of the witness giving it and see his facial expression and his physical condition as he talks. There is not room for serious disagreement as to what was said, as there is when a witness simply relates his recollection or version of oral statements of the declarant. Such video-taped statement is sufficiently trustworthy, in my judgment, to be treated as at least equivalent to a signed statement. I would not, however, extend the rule to cover purely oral statements related by some other witness as having been said by the declarant.

I am convinced, from a reading of the testimony, that evidence of earlier statements by Hackett were used for more than merely impeachment as permitted by the orthodox rule. There were questions asked as to which statement was the truth. Then the prosecuting attorney in closing argument contended for the truth of the proposition, based on Hackett's earlier statements, that James Granberry was present. This was not merely argument that Hackett's testimony at the trial should be ignored because he had been impeached. As indicated, I consider that this was proper in the instances of the prior deposition and the video-taped statement, but since evidence of prior oral statements by Hackett (other than his video-taped statement) were so used, I must conclude that for this reason reversible error occurred and the judgment must be reversed.

MORGAN, Judge (dissenting).

I respectfully dissent.

This court has long followed the so-called orthodox rule that prior extrajudicial statements are admissible for purposes of impeaching a witness, but that they are not to be accorded such probative value as to be accepted as substantive evidence. I see no compelling reason to abandon such a rule, but would continue to follow the same for the reasons exhaustively considered by this court in State v. Kinne, Mo., 372 S.W.2d 62.

Regardless of whether or not the rule is changed for any reason, I would affirm the conviction in this case.

Defense counsel, in his closing argument, sought to create what could be classified as "substantive" evidence for the defense, i. e., that the state had been a party to developing false and untrue evidence by the making of the video tape statement of witness Hackett. The witness had been in jail from December 12, 1969, to October 8,

1970. Defense counsel argued: ". . . he gave a video tape. Yes, sir. In the presence of certain prosecutors and so forth, it was testified to. And, of course, I am sure, just coincidentally, on October 8, 1970. Mr. Hackett went free on a little witness bond. [The video tape was made on October 8, 1970.] Isn't that an odd situation? But he made his peace with the Prosecutor's Office . . . ." To me, the closing argument by the state was in proper response thereto.

In addition, if it be assumed that the state's argument, as quoted in the majority opinion, was not invited but was in direct violation of the rule, it should not be considered as reversible error in view of the other evidence specifically establishing defendant as a participant in the crime. Briefly, such evidence showed a fingerprint of defendant on the inside of the escape car; his type blood inside the car, which was relevant to Patrolman Steinmeyer's testimony that, after running out of bullets, he had hit defendant on the head in an effort to prevent defendant driving away from the scene; the cut on defendant's head when he was arrested the next day; and, the positive identification by said patrolman, to-wit: "Q All right. Do you see the man in the courtroom today that you chased from the back of the service station, that is, from that back door area, to the '62 Buick? A Yes, I do. Q Would you point him out to the Court and the jury? A Sitting right there (indicating). (MR. SETTICH) Your Honor, please, may the record indicate that he is pointing to the defendant, James Granberry? THE COURT: It may. Q (By Mr. Settich) Is there any question in your mind about that, Officer? A None whatsoever."

BARDGETT, Judge (dissenting).

I respectfully dissent and concur in the dissenting opinion of Morgan, J. Having reviewed the transcript of the trial, I conclude that the closing argument of the state was legitimate retaliatory argument and did not even constitute non-prejudicial error. Its function was to destroy the credibility of Hackett's direct testimony that appellant was not present at the scene of the crime by the use of the impeaching evidence used during the examination of Hackett by the state. This was a legitimate use of the impeaching evidence and the conviction should be affirmed.

I agree with the views expressed by Seiler, J., and disagree with the views expressed by Finch, C. J., with respect to the rule of evidence discussed in their opinions in this case.

The evidence used by the state to impeach Hackett consisted of prior inconsistent statements. Some were oral, one was preserved on video tape, and another was preserved in a deposition taken by another defendant in a companion case. These were available for the purpose of impeaching Hackett but could not be used, and in my opinion were not used, as substantive evidence of the guilt of appellant.

The only way the state can preserve testimony of a witness, not a party, for use as substantive evidence at trial (other than testimony given in an earlier trial of the same case) is by taking the deposition of the witness to preserve testimony in accordance with Art. I, § 18(b), Mo.Const. 1945. This constitutional provision was first adopted in 1945 for the specific purpose of providing the method whereby the state could preserve substantive evidence for use at trial and at the same time preserve the confrontation and cross-examination rights of a defendant which are provided for in Art. I, § 18(a), Mo.Const.1945. The proposed change, in my opinion, conflicts with Art. I, §§ 18(a) and 18(b), Mo. Const.1945.

I would affirm the conviction.