STATE of Missouri, Respondent,

v.

Chad DARTY, Appellant.

No. 41805.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 20, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 13, 1981.

Application to Transfer Denied Sept. 8, 1981.

Robert C. Babione, Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George Peach, Circuit Atty., St. Louis, for respondent.

SMITH, Judge.

Defendant was convicted by a jury of first degree robbery, armed criminal action and assault with intent to kill without malice and sentenced to consecutive terms of imprisonment of ten years, ten years and five years. He appeals.

The robbery occurred at the Keys Cocktail Lounge in St. Louis. It was perpetrated by a single gunman wearing a Halloween mask. During the course of the robbery a patron, Maurice Jones, was shot three times resulting in the loss of sight of one eye and loss of a portion of a finger. An off-duty barmaid, present before and during the robbery, testified that defendant, whom she knew, entered the cocktail lounge approximately twenty to thirty minutes before the robbery and then left. She could not identify the robber. Jones testified that he was acquainted with defendant, whose family resided in the neighborhood, and that he recognized defendant's voice during the robbery. Jones' two younger sisters, twelve and thirteen at the time of the robbery, testified that they were playing or talking across the street from the lounge at the time of the robbery. One sister testified she saw defendant shortly before the robbery leave his father's house and drive around the corner from the lounge. Shortly thereafter she saw a man, dressed as defendant had been dressed and wearing a mask, enter the lounge, heard him order people not to move, heard shots and saw the man run from the lounge. The other sister saw essentially the same thing except she saw defendant as he was pulling on the mask and recognized him. Both sisters knew the defendant before the robbery. Both girls identified defendant as the robber to police before they were aware their brother had been shot.

Defendant testified that throughout the day and night of the robbery he was working in East St. Louis at a carnival and at his regular place of employment—a disco lounge. He presented a witness—a police officer from East St. Louis—who confirmed that defendant had worked at the carnival while it was in town but could not testify that defendant had worked at the carnival on the day of the robbery.

■ The defendant's first point is that the court erred in allowing the prosecutor to call as a witness the defendant's sister. This contention was not raised at trial nor in the motion for new trial. It is based upon the testimony of the sister that she had been a patient at the Malcolm Bliss mental health facility eight years before the trial and was still an outpatient. She testified that she received medication for sleep and had a nervous condition but not one affecting her memory.

■ Sec. 491.060 RSMo 1978 provides that a person of unsound mind at the time of his production for examination shall be incompetent to testify. Treatment at a mental hospital in the past and monthly outpatient treatment does not establish an unsound mind. Because the witness had not been adjudicated of unsound mind and was not presently confined to a mental institution she is presumed competent. *McCrary v. Ogden*, 267 S.W.2d 670 (Mo. 1954) [1–3]; *State v. McCarty*, 460 S.W.2d 630 (Mo.1970). There is no evidence to overcome this presumption. Nor did her affidavit that she did not want to testify make her incompetent or prevent her from being called as a witness. The point is without merit.

Defendant's next point also arises from the testimony of his sister. In testimony before the grand jury and in statements to the prosecutor the sister stated that on the evening of the robbery defendant came to his father's home, where the sister was staying, with a halloween mask and gun which he put into a bag. At trial the prosecution called the sister as a witness. She testified that she had not seen defendant at his father's house on the day of the robbery. Upon the prosecution's cross-examination of her, as a hostile witness, the sister affirmed that she had made the statements and testified before the grand jury to defendant's presence and actions at the father's house but stated that her earlier testimony and statements were lies and that the truth was she had not seen her brother on the date of the robbery.

The following exchange then occurred:

"Q. Were you trying to convict your brother of robbery then [the earlier testimony and statements] or are you trying to walk him out of here today, which is it?

A. Really I'm trying to walk Chad off.

Q. That's right, you're trying to walk Chad out, but that's not the truth, is it?

A. (No response)."

No objection was made to the line of questioning dealing with her prior testimony and statements. In the opening part of his argument the prosecutor was discussing the credibility of the sister and the defendant's efforts to preclude her from testifying.[1] The record shows the following argument by the prosecutor:

"His sisters had enough guts to come in here because they couldn't duck out a second time like he wanted them to. And if they were going to come in and tell the truth and he didn't do it, why wouldn't he want them to come in here? He knew they were going to come in and tell the truth and the truth would convict him, or they were going to come in and lie and

that's what they chose to do. You know they chose to lie. You heard Neta Darty's Grand Jury testimony. Let me read to you that briefly. Let me stop with Neta Darty's Grand Jury testimony so you know that she lied.

'Q Last May 12th around eight-twenty-five, shortly thereafter, were you in your home then?

A Yes.

Q What address is that?

A 2726 Hickory.

Q Did Chad come home to the house then?

A Yes.

Q What did he do when he came to the house then?

A He came in through the back door with a Halloween mask on.

Q Had you seen that mask before?

A Yes.

Q When did you see it before that time?

A I would say a year ago.

Q Did you know where the mask was being kept?

A Kept in my father's drawer.

Q When he came in the back door with the mask, did he have it on?

A Yes.

Q Did he have anything else in his hand?

A He had a pistol, he had a gun.

Q Was it a hand gun opposed to a rifle?

A A 357 Magnum.'

*Now, isn't that the truth in this case? Isn't the truth what she told me on the 15th and what she told the police on the 13th? Isn't that the truth in the case and that Chad Darty's guilty and he is guilty and you should assess a substantial punishment."* (Emphasis supplied)

No objection was raised to this argument at the time nor in the motion for new trial. Defendant, relying on *State v. Granberry,*

---

1. Defendant had prepared the affidavit signed by both his sisters that they did not wish to testify. At an earlier setting neither sister showed up to testify although they had been requested to do so by the prosecutor.

491 S.W.2d 528 (Mo. banc 1973) and *State v. Davis*, 566 S.W.2d 437 (Mo. banc 1978) contends that the reading of the grand jury testimony during argument and the emphasized comment thereafter was plain error requiring reversal.

■ In *State v. Granberry, supra*, the Supreme Court reaffirmed its acceptance of what is known as the "orthodox" rule. Basically that is that while a prior inconsistent statement of a witness who is not a party is admissible to impeach the credibility of the witness it is not competent as substantive evidence of the facts to which such statements relate. An exception is made for depositions. It is therefore erroneous to admit the evidence for its substantive truth or to argue it as proof of the substantive facts to which it relates.[2] We are, of course, bound by the *Granberry* case. Defendant raises no contention that the admission of the evidence initially was erroneous; he focuses his attack instead on the argument.

The State justifies the argument on the basis that the witness' failure to respond to the prosecutor's question "but that's not the truth is it?" was an admission that her earlier statements and grand jury testimony were true. We do not believe we can so interpret her lack of response. She never admitted on the stand that her prior inconsistent statements were true and in fact stated consistently they were lies. We also believe it incorrect to characterize the argument as dealing solely with the credibility of the witness. The emphasized portion of the argument clearly refers to the prior inconsistent statements as the "truth in this case." That is an argument that the prior inconsistent statements are proof of the substantive facts to which they relate. The question we must decide is whether the argument, unobjected to, is plain error requiring reversal.

*State v. Granberry, supra*, does not indicate whether the error there was preserved or not. The failure of the court to discuss "plain error" would lead us to believe that the matter was properly preserved. *See* dissenting opinion of Finch, J. in *State v. Davis, supra*. On the other hand, *State v. Davis, supra*, is clearly a plain error case. There the court reviewed the general guidelines for invoking the plain error rule and concluded that the argument there had a "decisive effect" on the jury. The prior inconsistent statements there were by an accomplice of the defendant, and only the accomplice directly implicated defendant in the killing.[3] We do not conclude that *State v. Davis, supra*, compels us to hold that such an argument is always plain error requiring reversal. Initially we note that *Davis* was a plurality opinion. Only two judges (one a special judge) concurred in the opinion of the court. One judge concurred in result. Two judges concurred, but solely on a ground unrelated to the prior inconsistent statements and argument and the "plain error" doctrine. Two judges dissented specifically on the ground that these are not the type of trial errors encompassed by the "plain error" doctrine. In that posture we cannot conclude that *Davis* mandates reversal where a non-objected to violation of the "orthodox rule" occurs. Secondly, *State v. Davis, supra*, reflects the frequently expressed doctrine that "plain error" is a flexible rule to be sparingly invoked. It arises only if the court concludes that a manifest injustice or miscarriage of justice has resulted. Rule 27.20(c).

■ We are unable to find such injustice or miscarriage here. It was not improper for the prosecutor to question defendant's sister extensively on her prior inconsistent statements. Nor was it improper to argue her credibility by reading her admittedly prior inconsistent statements. Because there was evidence from other witnesses that defendant was present at his father's

---

2. For a thorough discussion of the rationale for allowing such evidence as proof of the substantive facts to which it relates, see the concurring opinion of Finch, J. in *State v. Granberry, supra*.

3. Another witness did implicate defendant through statements made by the defendant to the witness.

house on the night of the robbery, the sister's testimony that she was present there and did not see defendant was beneficial to defendant. The state was entitled to impeach that testimony. *State v. Davis, supra.* The prohibited reference to the substantive consideration of this evidence was brief and to a degree less direct than that found in *Granberry* or *Davis.* There was substantial evidence from four witnesses directly refuting defendant's alibi evidence, and three of those witnesses unhesitatingly identified defendant as the perpetrator of the robbery. The only clear evidence of defendant's alibi was his own rather rambling testimony. His efforts to dissuade his sisters from testifying and their interest in helping him avoid conviction were clearly before the jury. While we recognize that attempting to evaluate what evidence or argument may have effected a jury is a most imprecise art, we are unable to conclude here that the argument had a "decisive effect" upon the jury resulting in manifest injustice or miscarriage of justice. "Plain error" is to be sparingly invoked because the failure to properly raise objections during the trial frequently precludes the trial court from taking action to correct or at least minimize the prejudicial effect of the error. We do not invoke the doctrine here.

Defendant next contends that he had ineffective assistance of counsel because of counsel's failure to seek to suppress guns seized from a residence into which defendant was moving. The record is not adequate to allow us to determine this issue on this appeal. *State v. Cluck,* 451 S.W.2d 103 (Mo.1970).

■ Defendant's final point is that his conviction of armed criminal action cannot stand for double jeopardy reasons. In view of *Sours v. State,* 603 S.W.2d 592 (Mo. banc 1980) this point is well-taken.

The convictions of first degree robbery and assault with intent to kill without malice are affirmed. The conviction of armed criminal action is reversed.

SATZ, P. J., and SIMON, J., concur.

